**James Earl RAY, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and Conrad Baetz, Appellees.**

**No. 81–1267.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 2, 1981.

Decided Sept. 9, 1981.

---

Robert D. Kingsland, U. S. Atty., Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for appellees.

James E. Ray, pro se.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

PER CURIAM.

On July 23, 1980, James Earl Ray, a prisoner at the Brushy Mountain Prison in Petros, Tennessee, filed a complaint in the district court which named the United States Department of Justice and Conrad Baetz as defendants. In essence, Ray's complaint [1] alleged three claims for relief. First, Ray

sought to compel the Justice Department to specify what criminal acts the Department contends he committed during a period in 1967–1968.[2] In April of 1967, Ray escaped from the Missouri State Penitentiary and remained a fugitive from the law until he was arrested in June of 1968 in connection with the homicide of Dr. Martin Luther King, Jr. Ray alleged in his complaint that numerous individuals, including persons not Justice Department employees, speculated that Ray engaged in criminal activity other than possible participation in the homicide of Dr. King during the 1967–1968 period when he was a fugitive. Ray's complaint, although less than clear, apparently alleged that the Justice Department improperly, and with reckless disregard of the truth amounting to malice, continually attributed various crimes to Ray that allegedly enabled Ray to financially survive during his period as a fugitive. Ray claimed that the Justice Department's speculation lessened his chances for parole in Tennessee and offered to waive any applicable limitation statutes in order to stand trial for any charge which the Justice Department could allege took place during the 1967–1968 period in controversy.

Second, Ray alleged that Conrad Baetz, formerly an investigator for the House Select Committee on Assassinations, directed one Oliver B. Patterson to steal certain letters from Jerry W. Ray, James' brother. Patterson allegedly took property from a Washington, D. C., hotel room, photocopied various letters James had written to Jerry and mailed the photocopies to defendant Baetz in Wood River, Illinois.[3] Ray claimed that Patterson's activities, taken at Baetz's direction, were in violation of his Fourth Amendment rights. He presumably sought to characterize Baetz as a federal agent for purposes of this claim.

Finally, Ray alleged that Baetz libeled him in a July 22, 1979, interview published

1. The July 23, 1980, complaint was slightly amended on August 29, 1980, and those amendments are reflected in the description of Ray's claims above.

2. Ray also sought, via the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, a determination of whatever rights he might have with

respect to the Justice Department's actions that allegedly attributed crimes to him.

3. Ray never specified that property other than these letters were the subject of the alleged Patterson search.

in the St. Louis Post-Dispatch.[4] Ray sought $25,000 in actual damages and $50,000 in punitive damages from Baetz for his Fourth Amendment and libel claims.

The district court granted the defendant's motion to dismiss pursuant to F.R. Civ.P. 12(b)(6) on February 10, 1981. *Ray v. United States Department of Justice*, 508 F.Supp. 724 (E.D.Mo.1981). The court dismissed Ray's claims against the Justice Department because it concluded that Ray essentially sought an order compelling the Justice Department to initiate criminal proceedings against him. *Id.* at 725. This request, concluded the district court, failed to state a claim upon which relief could be granted because "initiation of a federal criminal prosecution is a discretionary decision within the Executive Branch not subject to judicial compulsion." *Id.*

The district court also dismissed Ray's two claims against Baetz. The court dismissed Ray's Fourth Amendment claim because it concluded Ray lacked standing to claim damages for Patterson's alleged search of Jerry Ray's Washington, D.C., hotel room. *Id.* at 726. Finally, the district court dismissed Ray's libel claim against Baetz because it concluded Ray is "libelproof." *Id.* (citing *Ray v. Time, Inc.*, 452 F.Supp. 618, 622 (W.D.Tenn.1976), *aff'd mem.*, 582 F.2d 1280 (6th Cir. 1978). We affirm the district court's dismissal of Ray's suit, but do so on a different ground with respect to Ray's libel claim against Baetz.

### Ray's Claims Against the Justice Department

■ Ray seeks a declaratory judgment to determine his legal rights concerning the Justice Department's actions that allegedly implicated Ray in criminal activity during his 1967–1968 period as a fugitive. Ray also seeks an order to compel the Justice Department to specify the criminal acts, and the evidence to support such allegations, that the Department believes Ray committed during 1967–1968.

In our view, the district court's refusal to grant declaratory or other relief was correct. The allegedly improper actions which Ray listed in his complaint and "documented" with various photocopies at best reveal that certain officials speculated as to Ray's activities and sources of financial support during the 1967–1968 period that he was a fugitive.[5] The record does not support Ray's claims of concerted activity against him and, in fact, many individuals complained of are not Justice Department employees. Moreover, the documents in the record are innocuous and we cannot see how Ray would benefit from any sort of declaratory relief. Ray simply did not show that declaratory or other relief was warranted against the Justice Department.

### Ray's Claims Against Baetz

Baetz submitted an affidavit which denied that he ordered Patterson to take property from Jerry Ray's hotel room. Patterson, however, submitted affidavits to the contrary. Thus, a genuine factual dispute arose as to this issue.

The district court, relying on *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), held that Ray lacked standing to raise a Fourth Amendment

---

**4.** The July 22, 1979, Post-Dispatch article discussed the possibility that in 1966 or 1967, a St. Louis attorney, now deceased, offered one Russell G. Byers $50,000 to kill Dr. Martin Luther King, Jr. The story reported that Byers refused the offer, and stated that the belief that the offer was transmitted to the Ray family was "merely speculation." Baetz was interviewed for the article because he investigated Byers' story. The article stated that Baetz believed one of James Earl Ray's brothers served as an intermediary between James Earl Ray and the St. Louis attorney who allegedly offered to pay for Dr. King's murder. However, the article reported that Baetz's investigation never proved any such link.

**5.** Ray's brief, for example, merely states that FBI Director William H. Webster, in a June 24, 1980, St. Louis Post-Dispatch article, "inferred" that he had robbed banks during his fugitivity period and used the proceeds to finance the homicide of Dr. Martin Luther King, Jr. In our view, Ray's allegations against the Justice Department are plainly insufficient to state a claim.

claim for damages because the search and seizure involved the property and premises of another, Jerry Ray. *Ray v. United States Department of Justice, supra,* 508 F.Supp. at 726. The district court apparently concluded that James' letters to Jerry Ray became Jerry's property upon receipt and that James accordingly lost any expectations of privacy that he had in the letters. *Id.*

 Although not cited by the district court, *United States v. Hubbard,* 493 F.Supp. 209 (D.D.C.1979), supports its conclusion. *Hubbard* involved the attempts of criminal defendants to suppress evidence, but its analysis of Fourth Amendment standing seems equally relevant here. *Hubbard* states that the test for Fourth Amendment standing is whether an individual, based on the facts and circumstances presented by that individual, has a legitimate expectation of privacy in the invaded place. *Id.* at 213–214 (citing *Rakas v. Illinois, supra* ). Significantly for this appeal, the district court in *Hubbard* was "unable to understand how *sending* letters to a third party would form a basis for a legitimate expectation of privacy after their delivery. The reasonableness of one's privacy expectations would certainly be undermined by the act of relinquishing control." *Id.* at 214–215 (emphasis in original, footnote omitted). The *Hubbard* court's conclusion controls the standing issue in this case because Ray only alleged that Patterson purloined and photocopied letters he had written to his brother, Jerry Ray. Therefore, the appellant did not retain a legitimate expectation of privacy in those papers. We agree with the district court's dismissal of this claim because James Earl Ray lacks standing to contest the alleged search of Jerry Ray's hotel room.

 Ray argues that the decision which concluded he was "libel-proof"[6] is no longer persuasive in light of *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). We need not decide whether the libel-proof doctrine is applicable here because we conclude that Ray's libel allegations against Baetz do not present facts which state an actionable claim. *See* n.4, *supra.*

The district court's dismissal is affirmed.

---

6. *Ray v. Time, Inc.,* 452 F.Supp. 618, 622 (W.D. Tenn.1976), *aff'd mem.,* 582 F.2d 1280 (6th Cir. 1978).