ANTHONY JACKSON *vs.* KAY LONGCOPE & another.[1]

Suffolk. February 6, 1985. — April 17, 1985.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Libel and Slander.*

The extensive criminal record of the plaintiff in a libel action, including a first degree murder conviction and pending indictments for murder in well-publicized cases, barred the plaintiff, as matter of law, from maintaining the action. [579-582]

CIVIL ACTION commenced in the Superior Court Department on May 29, 1979.

A motion to dismiss was heard by *Andrew G. Meyer*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

The case was submitted on briefs.

*Anthony Jackson*, pro se.

*James F. McHugh & Ellen G. Grant* for the defendants.

WILKINS, J. The plaintiff, Jackson, was subject to substantial criminal sentences, including a life sentence for murder in the first degree, when on May 20, 1977, the Boston Globe, a newspaper published by the corporate defendant, printed an article allegedly libelous of Jackson and written by the defendant Longcope. We conclude that Jackson was libel-proof at the time of the publication and, therefore, affirm the summary judgment entered for the defendants.

The allegedly libelous article appeared in the Boston Globe approximately one month after a Plymouth County jury found Jackson not guilty of the 1972 rape and murder of a twenty-one year old Cambridge woman. The article set forth statements from various jurors as to why the jury had returned verdicts of

---

[1] Globe Newspaper Company.

not guilty. The article pointed out that the jurors did not know that in December, 1976, Jackson had been convicted of the murder, rape, unarmed robbery, and kidnapping of Ruth A. Hamilton, a twenty-three old art teacher, or that he had been convicted in June, 1976, of crimes associated with a shootout with Cambridge police officers. The article stated that the shootout occurred "during a stolen car chase." It recited that Jackson was under indictment for the slaying of two other young women. It referred to a series of 1972 slayings as "the hitch-hike murders," adding that all the women were raped and strangled.

On May 24, 1977, Jackson wrote a letter to the defendant Longcope demanding a correction of the statement that the shootout with the Cambridge police occurred during a stolen car chase and the statement that all the victims of "the hitch-hike murders" were raped and strangled. He asserted that the car was not stolen, that not all the hitch-hike murder victims were raped, and that not all were strangled. Jackson brought his action in May, 1979. In his amended complaint, filed in July, 1979, Jackson alleged that substantially the same statements were untrue. The amended complaint alleged libel and a now abandoned claim of invasion of privacy.

The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The motion judge accepted the recommendation of a special master that the motion to dismiss should be treated as a motion for summary judgment and, so treated, should be allowed. We transferred Jackson's appeal here on our own motion.

We assume in Jackson's favor that the newspaper article was libelous and that the material before the motion judge did not warrant the conclusion that all the libelous statements in the article were substantially true. On the other hand, Jackson's considerable criminal record, as to which there is no dispute of material fact, bars him from recovering damages for libelous statements concerning his criminal activities. For the purposes of this case, we shall rely only on Jackson's criminal record and other circumstances established at the time of the libelous publication. We thus leave open the question whether events

subsequent to libelous publication, proving a plaintiff's serious criminal misconduct prior to the publication, may be considered in determining whether a plaintiff is libel-proof.

This court has had little occasion to consider whether a particular libel plaintiff may have such a notorious reputation that he is incapable of recovering damages in a libel action, and, therefore, may be characterized as libel-proof. In *Lyons* v. *New Mass Media, Inc.*, 390 Mass. 51, 61 (1983), the defendants argued that the plaintiff was libel-proof as a matter of law because of prior adverse publicity, but this court rejected the argument on the facts presented. The principle has been recognized elsewhere and has been applied to justify dismissal of defamation actions where the substantial criminal record of a libel plaintiff shows as a matter of law that he would be unable to recover other than nominal damages. See *Cardillo* v. *Doubleday & Co.*, 518 F.2d 638, 639-640 (2d Cir. 1975); *Wynberg* v. *National Enquirer, Inc.*, 564 F. Supp. 924, 928 (C.D. Cal. 1982), and cases cited. As the court said in the *Wynberg* case, "Depending upon the nature of the conduct, the number of offenses, and the degree and range of publicity received, there comes a time when the individual's reputation for specific conduct, or his general reputation for honesty and fair dealing is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements." *Id.* The principle might apply to a habitual criminal (see *Cardillo* v. *Doubleday & Co., supra*), or to a criminal notorious for one criminal act (see *James Earl Ray* v. *Time, Inc.*, 452 F. Supp. 618 [W.D. Tenn. 1976], aff'd mem., 582 F.2d 1280 [6th Cir. 1978]).

Although a libel plaintiff who cannot prove damages is normally entitled to an award of nominal damages if he establishes that he was libeled (see W.L. Prosser & W.P. Keeton, Torts § 116A, at 845 [5th ed. 1984]), courts have generally considered First Amendment rights as predominating in cases of this character and have denied a libel-proof plaintiff the right to try to prove his case and recover simply nominal damages. See *Cardillo* v. *Doubleday & Co., supra* at 640, quoting *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 349 (1974); *Wynberg*

v. *National Enquirer, Inc., supra* at 928; *James Earl Ray* v. *Time, Inc., supra* at 622. It has been suggested that, under First Amendment principles, at least as to a public figure, such as Jackson, proof of actual damages may be required and thus nominal damages may not be awarded. See W.L. Prosser & W.P. Keeton, Torts, *supra*; Restatement (Second) of Torts § 620 comment c (1977). In any event, we accept the principle that a libel-proof plaintiff is not entitled to burden a defendant with a trial in which the most favorable result the plaintiff could achieve is an award of nominal damages. Although we accept the principle that a convicted criminal may have such a poor reputation that no further damage to it was possible at the time of an otherwise libelous publication, it must be clear, as a matter of law, that the reputation of a plaintiff, even a convicted felon, could not have suffered from the publication of the false and libelous statements. See *Marcone* v. *Penthouse Int'l, Ltd.*, 577 F. Supp. 318, 333 (E.D. Pa. 1983), rev'd on other grounds sub nom. *Marcone* v. *Penthouse Int'l Magazine for Men*, 754 F.2d 1072 (3d Cir. 1985); *Sharon* v. *Time, Inc.*, 575 F. Supp. 1162, 1168-1169 (S.D. N.Y. 1983). We turn, therefore, to the question whether the plaintiff Jackson is libel-proof.

By the time of the publication challenged by Jackson, he had already been convicted of various crimes.[2] In 1976, Jackson had been found guilty of armed assault with intent to murder and unlawful carrying of a firearm, arising out of a 1972 running gunfight with Cambridge police officers. We affirmed

---

[2] It is proper on a motion for summary judgment to recognize those facts of which a judge may take judicial notice, including criminal cases involving a party. See 10A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2723 (1983); *Matter of Welansky*, 319 Mass. 205, 210 (1946); *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681 (1974).

It may not have been necessary to treat the motion to dismiss as a motion for summary judgment. The only facts outside the complaint that are involved are those of which judicial notice may be taken. It seems reasonable to take judicial notice of facts when considering a motion to dismiss under Mass. R. Civ. P. 12 (b) (6). See 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1367, at 685 (1969), discussing Fed. R. Civ. P. 12 (c) (judgment on the pleadings).

that conviction. *Commonwealth* v. *Jackson,* 376 Mass. 790 (1978). Later in 1976, Jackson had been convicted of murder in the first degree, kidnapping, rape, and unarmed robbery of a woman in December, 1972. Jackson was sentenced to various terms of incarceration for these convictions. He received a sentence of life imprisonment without the possibility of parole for the murder conviction. On both the conviction for rape and unarmed robbery, he was sentenced to not more than thirty nor less than twenty years, the sentences to be served concurrently after the expiration of the sentence for murder in the first degree. We affirmed these convictions. *Commonwealth* v. *Jackson,* 388 Mass. 98 (1983). In that appeal, Jackson claimed that pretrial publicity had deprived him of a fair trial. He submitted an exhibit to the trial judge in that case setting forth scores of newspaper articles published between December 27, 1972, and September 1, 1976. These articles reported, among other facts, the deaths of the victim and several other other women and the defendant's indictment for four murders. *Id.* at 109.[3]

---

[3] This court has dealt with other matters involving Jackson. In June, 1976, we upheld a lower court decision to permit the introduction in evidence of certain incriminating, recorded telephone conversations between Jackson and the brother of Damaris Synge Gillispie, for whose murder and kidnapping the defendant had been indicted in February, 1973. *Commonwealth* v. *Jackson,* 370 Mass. 502 (1976). After the publication involved in this case, Jackson was convicted of these charges in 1978, and we affirmed the convictions. *Commonwealth* v. *Jackson,* 391 Mass. 749 (1984). In our opinion, we noted that "[t]he hitchhike murders received extensive publicity in late 1972 and 1973, as did the defendant's trials in 1976, 1977, and 1978." *Id.* at 753.

In April, 1976, we considered Jackson's challenges to lower court rulings concerning his representation by counsel with respect to his April, 1973, indictment for the murder of Ellen Ann Reich. *Jackson* v. *Commonwealth,* 370 Mass. 855 (1976). Jackson was convicted of the Reich murder in 1978, after the publication involved in the case before us, and we upheld the conviction. *Commonwealth* v. *Jackson,* 384 Mass. 572 (1981).

Finally, in *Jackson* v. *Commissioner of Correction,* 388 Mass. 700 (1983), we upheld a decision of the Commissioner of Correction to transfer Jackson from a medium security correctional facility to a maximum security facility. In that opinion, it appears that in the summer of 1976 approximately eight inmates of the Massachusetts Correctional Institution at Cedar Junction entered

We know from this record of Jackson's criminal activity that, at the time of the libelous publication in this case, Jackson had been convicted of numerous serious crimes. He was serving a life sentence for murder, without the possibility of parole, with consecutive sentences of long duration to be served after the expiration of that life sentence. He was under indictment for other murders. There had been substantial publicity concerning the various crimes with which Jackson was charged and for which he had been convicted. Jackson himself in his complaint challenged as factually wrong only the newspaper article's statements that the shootout with the Cambridge police involved a stolen car chase and that all the victims of the 1972 slayings were raped and strangled. Jackson claimed he was not involved in a stolen car chase, that in two other cases there were no rape charges pending, and not all the women were strangled. By his silence concerning the notoriety of the "hitch-hike murders," his prior convictions and sentences, and the stated pendency against him of two other murder indictments, Jackson concedes that he had been convicted of one of the "hitch-hike murders," had been sentenced to long terms of incarceration in the Massachusetts Correctional Institution at Cedar Junction, and had two other murder indictments pending against him. In the circumstances, Jackson was libel-proof.

Jackson complains that the motion judge improperly treated the defendants' motion to dismiss under Mass. R. Civ. P. 12 (b) (6), as a motion for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), without giving him a reasonable opportunity to present opposing material, by affidavit or otherwise. See *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 893 (1983); *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 126-128 (1982). Jackson discussed the libel-proof issue in his memorandum in opposition to the defendants' motion to dismiss, which was filed in response to the defendants' memorandum in support of their motion to dismiss. We see no basis

---

Jackson's cell, beat him, and poured a disinfectant in his eyes. *Id.* at 701. Jackson feared for his safety if returned to the prison at Cedar Junction. Even in that segment of society, Jackson appears to have had a reputation not universally respected.

for concluding that Jackson was prejudiced or unfairly surprised by the judge's treatment of the matter under rule 56, nor does Jackson indicate what he could have offered to counter the facts considered, which are basically facts of which the judge took judicial notice.

*Judgment affirmed.*