**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**DEC 9 2004**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

---

THOMAS P. LAMB,

        Plaintiff-Appellant,

v.

TONY RIZZO,

        Defendant-Appellee.

No. 03-3179

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 02-CV-1282-JTM)**
**(242 F. Supp. 2d 1032)**

---

Submitted on the briefs:

Thomas P. Lamb, pro se.

Michael J. Abrams of Lathrop & Gage L.C., Kansas City, Missouri, for Defendant-Appellee.

---

Before **LUCERO**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    The state of Kansas incarcerated Thomas P. Lamb, pro se plaintiff in this libel action, over thirty years ago. He is serving three consecutive life sentences

for two counts of first degree kidnapping and one count of first degree murder.  In July 2001, defendant, newspaper reporter Tony Rizzo, wrote two articles about Mr. Lamb's convictions and upcoming parole hearing.  When Mr. Lamb's request for parole was subsequently denied, he sued Mr. Rizzo in Kansas state court asserting, among other things, that Mr. Rizzo's articles contained "lies and false information" which caused Mr. Lamb to be denied parole.  R. Vol. I, Doc. 1, Ex. A at 1.

Mr. Rizzo removed the case to federal district court based upon diversity of citizenship.  He also filed a motion to dismiss for failure to state a claim, attaching to it numerous newspaper articles chronicling Mr. Lamb's criminal history.  In the motion, Mr. Rizzo contended that Mr. Lamb was libel-proof as a matter of law; in other words, his public reputation at the time the articles were published was so diminished with respect to a specific subject (his kidnapping and murder convictions), that he could not be further injured by allegedly false statements on that subject.  Because damage to one's reputation is the heart of a defamation action in Kansas, argued Mr. Rizzo, Mr. Lamb's claims must be dismissed.

Mr. Lamb countered that, by the time the     articles were published, his reputation had been rehabilitated and that he was no longer libel-proof.  To

substantiate this contention, Mr. Lamb attached many exhibits to his response, including letters from various individuals who had recommended he be paroled.

On January 31, 2003, the district court dismissed Mr. Lamb's complaint for failure to state a claim upon which relief could be granted. While acknowledging that Mr. Rizzo did not cite any Kansas case law adopting the libel-proof plaintiff doctrine, the district court predicted that the Kansas Supreme Court, if presented with the issue, would adopt the doctrine. *Lamb v. Rizzo,* 242 F. Supp. 2d 1032, 1037 (D. Kan. 2003) . It also predicted that, based on the factual narrative of Mr. Lamb's crimes in the Kansas Supreme Court's decision affirming his convictions, that court would hold the doctrine applicable to Mr. Lamb and conclude that Mr. Rizzo's articles were not actionable as a matter of law. *Id.* at 1037-38. After the district court entered judgment, Mr. Lamb filed a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, which the district court denied. This appeal followed. [1]

Our jurisdiction arises under 28 U.S.C. § 1291. Because we agree with the district court's prediction that the Kansas Supreme Court would adopt the libel-proof plaintiff doctrine and hold that it is a bar to Mr. Lamb's claims, and

---

[1] We liberally construe Mr. Lamb's pro se pleadings. *Haines v. Kerner* , 404 U.S. 519, 520-21 (1972) (per curiam).

because the district court did not abuse its discretion in denying Mr. Lamb's motion to alter or amend the judgment, we affirm. [2]

## I. Background

Although the district court included a detailed factual summary, our disposition requires only an abbreviated description of the facts pertinent to this appeal. The following facts are largely undisputed.

> In December, 1969, Lamb kidnapped and murdered Karen Sue Kemmerly, who was then 24 years old. Kemmerly's nude body was found . . . on December 7, 1969. In January, 1970, he kidnapped Patricia Ann Childs, who was then 18 years old. Lamb demanded ransom from Childs' parents, which they agreed to pay. Law enforcement officers staked out the scene of the ransom payment, and were able to apprehend him after a high speed car chase.

*Lamb*, 242 F. Supp. 2d at 1033. Several days later, while being held without bond,

> [Mr. Lamb] obtained a 38 caliber pistol. He and [a jail] trustee then took three dispatchers and a jailer captive and escaped from the jail after locking the four sheriff's officers in a jail cell. [Mr. Lamb] and [the trustee] then proceeded across the street from the courthouse to a small cafe where they took a patron, Loyd Midyett, hostage. The pair then commandeered Midyett's car . . . with Midyett in their custody . . . . [and] they were eventually apprehended at a roadblock . . . .

---

[2]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

*Id.* at 1037 (quoting *State v. Lamb*, 497 P.2d 275, 282 (Kan. 1972), *overruled on other grounds by State v. Jacques*, 587 P.2d 861 (Kan. 1978)).

Mr. Lamb has now been imprisoned for more than a quarter of a century. But "even that isolation has not prevented him from periodically attempting his violent reentry into society at large." *Id.* at 1038. In 1979, Mr. Lamb escaped from the Kansas State Penitentiary, "stole a car and led officers on another high speed chase." *Id.* And, in 1987, he escaped "from the Larned State Hospital, during which he threatened a farmer at knife point, stole his car, and led officers on yet another car chase." *Id.*; *but see* Aplt. Br. at 7 (characterizing his 1987 escape as "walk[ing] away from minimum security").

As set forth above, Mr. Lamb was denied parole in 2001 and shortly thereafter sued Mr. Rizzo. Mr. Lamb asserted that Mr. Rizzo's articles were defamatory (and that publishing them constituted a negligent tort, R. Vol. I, Doc. 1, Ex. A at 2, 4) because he inaccurately reported that Mr. Lamb: (1) was convicted of raping both Ms. Kemmerly and Ms. Childs; (2) was arrested "after a chase and shootout that left one police officer seriously injured;" (3) "fooled prison officials in 1969, when he was serving time for burglary" into recommending him for parole; and (4) pursued his victims by "prowl[ing] area shopping centers, dressed as a woman." *Id.* at 2-3. Mr. Lamb argued that these statements were defamatory because, he alleged,

(1) he was never charged with rape as to either of his victims and that his second victim told several different stories; (2) while an officer may have been shot [as] officers were pursuing him, the shot came from another officer and was in any event not life threatening; (3) there is no indication that he fooled anyone into recommending him for parole; and (4) while Lamb did abduct Ms[.] Childes [sic] from a shopping center, [he] was fully dressed as a male at that time.

*Lamb*, 242 F. Supp. 2d at 1033 (citations and quotations omitted).

## II. Discussion

### A. Dismissal of Plaintiff's Complaint Based Upon the Libel-Proof Plaintiff Doctrine

In concluding that the libel-proof plaintiff doctrine barred Mr. Lamb's claims, the district court resolved Mr. Rizzo's motion to dismiss under Fed. R. Civ. P. 12(b)(6). Notwithstanding, the court clearly relied upon and incorporated into its order granting the motion material derived from documents outside the four corners of Mr. Lamb's complaint. In so doing, "the court converted the motion to dismiss into a motion for summary judgment." *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986). We must therefore "review the record under summary judgment standards," and affirm the district court's ruling "if it is clear from the record on appeal that there are no genuine issues of fact to be tried and the movant is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56.[3]

---

[3] The district court did not give notice of its intent to convert Mr. Rizzo's

(continued...)

On appeal, Mr. Lamb argues that the district court "knew that Kansas did not have a libel-proof plaintiff doctrine" and knowingly violated his rights by applying "that federal doctrine to his case." Aplt. Br. at 6. In the alternative, he apparently argues that even if the libel-proof plaintiff doctrine is applicable, it cannot be used to bar his claims thirty-one years after "the only crime that could have labeled [him] . . . libel-proof." *Id.* at 7. Mr. Lamb's arguments, however, are misplaced.

As a preliminary matter, although Mr. Lamb concedes that the substantive law of the forum state applies, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), he fails to recognize that "[i]n the absence of authoritative precedent from the Kansas Supreme Court . . . , our job is to predict how that court would rule," *Carl v. City of Overland Park*, 65 F.3d 866, 872 (10th Cir. 1995). Additionally, and contrary to Mr. Lamb's contention, the libel-proof plaintiff doctrine is not an exclusively federal doctrine. It is a judicially created doctrine that has been applied in a number of jurisdictions for more than two decades. [4] It recognizes

---

[3](...continued)
Rule 12(b)(6) motion, but Mr. Lamb does not and cannot claim that the absence of notice prejudiced him. *See Nichols*, 796 F.2d at 364. Mr. Lamb not only failed to object to the exhibits attached to Mr. Rizzo's motion to dismiss, but Mr. Lamb also filed his own exhibits in response. *See id.*

[4]     *Guccione v. Hustler Magazine*, *Inc.*, 800 F.2d 298, 303-04 (2d Cir. 1986); *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639-40 (2d Cir. 1975); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 346, 352-55 (S.D.N.Y. 1998); *Wynberg v. Nat'l*
(continued...)

that damage to one's reputation is the core of a defamation action, and essentially holds

> that when a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant with a trial.

Eliot J. Katz, Annotation, *Defamation: Who is "Libel-Proof,"* 50 A.L.R.4th 1257 (2004); *accord* 1 Robert D. Sack, *Sack on Defamation* § 2.4.18 (3d ed. 2004); *see generally* Note, *The Libel-Proof Plaintiff Doctrine*, 98 Harv. L. Rev. 1909 (1985). Stated another way:

> When . . . an individual engages in conspicuously anti-social or even criminal behavior, which is widely reported to the public, his reputation diminishes proportionately. Depending upon the nature of the conduct, the number of offenses, and the degree and range of publicity received, there comes a time when the individual's reputation for specific conduct, or his general reputation for honesty and fair dealing is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements.

---

[4](...continued)
*Enquirer, Inc.*, 564 F. Supp. 924, 927-28 (C.D. Cal. 1982); *Ray v. United States Dep't of Justice*, 508 F. Supp. 724, 726 (E.D. Mo.), *aff'd*, 658 F.2d 608 (8th Cir. 1981); *Logan v. Dist. of Columbia*, 447 F. Supp. 1328, 1332, 1336 (D. D.C. 1978); *Ray v. Time, Inc.*, 452 F. Supp. 618, 622 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1280 (6th Cir. 1978); *Cofield v. Advertiser Co.,* 486 So. 2d 434, 435 (Ala. 1986); *Jackson v. Longcope*, 476 N.E.2d 617, 618-21 (Mass. 1985); *Davis v. Tennessean*, 83 S.W.3d 125, 128-31 (Tenn. Ct. App. 2001); *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 239 (Mich. App. 1999); *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 515-18 (Tex. Ct. App. 1987).

First Amendment considerations of free press and speech, promoting society's interest in uninhibited, robust, and wide-open discussion, must prevail over an individual's interest in his reputation in such cases. An individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be "libel proof" as a matter of law, as it relates to that specific behavior.

*Wynberg*, 564 F. Supp. at 928 .

The libel-proof plaintiff doctrine was first enunciated in *Cardillo v. Doubleday & Co.*, where a prisoner, Cardillo, brought a libel suit asserting that the authors and publishers of *My Life in the Mafia* incorrectly reported that he had participated in certain specific crimes. 518 F.2d at 639-40. After recounting Cardillo's "record and relationships," the Second Circuit concluded that it could not "envisage any jury awarding, or any court sustaining, an award under any circumstances for more than a few cents' damages," *id.* at 640, and held Cardillo "libel-proof, *i.e.*, so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages." *Id.* at 639.

Having set forth a description of the libel-proof plaintiff doctrine and where it first took hold, we now turn to the district court's prediction that the Kansas Supreme Court would, on these facts, adopt the doctrine and hold that it is a bar to Mr. Lamb's claims.

> [A] federal court's prediction of state law looks to (1) lower state court decisions and state Supreme Court dicta; . . . (3) the general rule on the issue; (4) the rule in other states looked to by [Kansas] courts when they formulate their own substantive law, and (5) other

available legal sources, such as treatises and law review commentaries.

*DP-Tek, Inc. v. AT & T Global Info. Solutions Co.*, 100 F.3d 828, 831 (10th Cir. 1996) (alterations in original) (quoting *Menne v. Celotex Corp.*, 861 F.2d 1453, 1464-65 n.15 (10th Cir. 1988)).[5] *See also Carl*, 65 F.3d at 872 ("Kansas Supreme Court dicta, which represents that court's own comment on the development of Kansas law, is an appropriate source from which [a] prediction may be made.").

Libel is governed by state law. In Kansas,

> damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander . . . . It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander.

*Gobin v. Globe Pub. Co.*, 649 P.2d 1239, 1243 (Kan. 1982); *see also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275 (1971) ("[D]amage to reputation is, of course, the essence of libel."). The libel-proof plaintiff doctrine has not been

---

[5] We decided *Menne* before the Supreme Court's decision in *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991), in which the Court held that an appellate court shall not defer to the district court's determination of state law. *Id.* at 231, 238-39. We therefore omit *Menne's* second factor, that a "federal court's prediction of state law look[] to . . . the lower court ruling in the case," 861 F.2d at 1464-65 n.15. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003) (observing that "this court affords no deference to a district court's interpretation of state law"); *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001) ("We review the district court's interpretation of Kansas state law de novo.").

adopted by the Kansas Supreme Court, but, in *Ruebke v. Globe Communications Corp.*, the court recognized the doctrine's existence. 738 P.2d 1246, 1249-50, 1252 (Kan. 1987). Although the court did not find the doctrine applicable given the facts of that case, in recognizing the existence of the doctrine, the Kansas court observed in dicta that the libel-proof plaintiff doctrine applied in cases where "the plaintiff had already suffered from a lowered reputation in the community because of the plaintiff's *prior* convictions for the crime alleged in the publication or for a similar crime." *Id.* at 1249. In *Ruebke*, however, the allegedly defamatory article was published before Mr. Ruebke was convicted of the crimes he was accused of committing. Therefore, said the Kansas Supreme Court, the alleged defamer could not rely on Mr. Ruebke's *subsequent* criminal convictions to render him libel proof. *Id.* at 1249-50. By contrast, the facts surrounding Mr. Lamb's case fit within the Kansas Supreme Court's description of when the doctrine might apply. Mr. Lamb, unlike Mr. Ruebke, was convicted long before Mr. Rizzo's allegedly defamatory articles were published. Thus, Mr. Lamb had "already suffered from a lowered reputation in the community [due to his] *prior* convictions for the crime alleged in the publication or for a similar crime." *Id.* at 1249.

Since the libel-proof plaintiff doctrine's inception, it has been said that "[t]he cases that most compellingly invite [the doctrine's] application are those

cases, like *Cardillo* , in which criminal convictions for behavior similar to that alleged in the challenged communication are urged as a bar to the claim." *Finklea,* 742 S.W.2d at 515 (citing *Wynberg* , 564 F. Supp. 924; *Logan* , 447 F. Supp. 1328; and *Jackson* , 476 N.E.2d 617). This is just such a case. The communication Mr. Lamb challenged related specifically to his past criminal conduct, and it matters not that thirty-one years had passed since what he characterizes as "the only crime that could have labeled [him] libel-proof." Aplt. Br. at 7.

> "This is not a case," resolved the district court,
>
> in which the substance of the plaintiff's reputation-destroying actions are in any doubt. Given the utter heinousness of the offenses which led to the plaintiff's three consecutive sentences of life imprisonment, the uncontroverted nature of those offenses, and the widespread notoriety attached to the convictions of the plaintiff as well as his periodic escapes from custody, the plaintiff has not and cannot present an actionable case of libel based upon the purported misstatements contained in Rizzo's articles.

*Lamb,* 242 F. Supp. 2d at 1038; *see also State v. Lamb* , 497 P.2d at 285 (acknowledging that Mr. Lamb's crimes against Ms. Kemmerly and Ms. Childs were "widely covered and reported by the news media").

In considering whether the Kansas Supreme Court would adopt this doctrine, we have looked to the required sources: Kansas Supreme Court dicta, the general rule on the issue, treatises, and law review commentaries. *DP-Tek, Inc.* , 100 F.3d at 831. We affirm the district court's holding that the Kansas

-12-

Supreme Court would adopt the libel-proof plaintiff doctrine. And, reviewing the record under summary judgment standards, we also affirm the district court's determination that the Kansas Supreme Court would hold it applicable to Mr. Lamb. This case presents us with one of those narrow "instances where . . . allegedly libelous statement[s] cannot realistically cause impairment of reputation . . . [and] the [plaintiff's] claim[s] should be dismissed." *Guccione*, 800 F.2d at 303; *see also Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir. 1976) (warning that the libel-proof plaintiff doctrine is "a limited, narrow [principle]"). It is clear that there are no genuine issues of fact and that Mr. Rizzo is entitled to judgment as a matter of law. We therefore affirm the district court's determination and conclude that the allegedly libelous articles written by Mr. Rizzo are not actionable as a matter of law.

**B.      Denial of Plaintiff's Post-Judgment Motion to Alter or Amend**

Mr. Lamb also challenges the district court's denial of his Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, arguing that the court erred by holding his negligence claim subsumed by his libel claim, and denying him his "right to discovery," Aplt. Br. at 10. Having reviewed the district court's ruling for an abuse of discretion and concluded that the court did not make "a clear error of judgment or exceed[] the bounds of permissible choice in the circumstances," we leave the district court's ruling undisturbed. *Phelps v. Hamilton*, 122 F.3d

-13-

1309, 1324 (10th Cir. 1997). "A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." *Id.* Neither circumstance applies here.

The judgment of the district court and its order denying Mr. Lamb's motion to alter or amend are AFFIRMED.