MacDonald, D. Lloyd, J.
Plaintiff Daniel Leo Holland (“Holland”) brought this action pro se against Defendants J.W. Carney, Jr. (“Carney”), Janice Bassil (“Bassil”), and Carney & Bassil (collectively, “defendants” or “Carney & Bassil”) arising out of Carney’s former representation of him in connection with Holland’s indictment for first-degree murder. Holland asserts claims for defamation, conspiracy to commit defamation, commercial appropriation, legal malpractice, and violation of attorney-client privilege. In the complaint Holland also asserts counts for conspiracy *416 to commit defamation and violation of G.L.c. 93A against Irwin Kwiat (“Kwiat”), who succeeded Carney & Bassil as his counsel.
Carney & Bassil has brought this motion for summary judgment as to all six counts asserted against Carney & Bassil. For the reasons set forth below, the motion is allowed in part and denied in part.
The Claims
The essence of the complaint against Carney & Bassil surrounds actions taken by Carney in connection with a written narrative (the “History”) that Holland prepared at Carney & Bassil’s request in anticipation of presenting a diminished capacity defense. In the History Holland detailed his personal involvement with alcohol and drugs and related mental issues.
Holland hand-wrote the History in the form of a letter addressed to Carney. The defendants had the History typed, converted from letter form and titled it, “Alcohol and Drug History of Daniel Holland.” With Holland’s knowledge the History was given to a consulting forensic expert, Dr. Harold Rosenblatt (“Dr. Rosenblatt”), to evaluate in connection with the diminished capacity defense.
It is Carney & Bassil’s revision of the History and its subsequent use of it that underlie the complaint. Holland alleges that he did not authorize Carney & Bassil to revise the History and that the revisions materially changed what he had written. Further, Holland claims that it was only to Dr. Rosenblatt that he gave Carney & Bassil permission to disclose the History. When Holland subsequently found out that Carney & Bassil had incorporated the History into the materials Carney used as part of a presentation he gave at a program sponsored by the Massachusetts Continuing Legal Education, Inc. (“MCLE”) on the defense of diminished capacity, Holland promptly replaced Carney & Bassil as counsel. Holland further asserts that he was also unaware that Carney & Bassil had earlier filed the History as part of several court submissions. Related to Carney’s allegedly unauthorized revisions of the History, Holland also claims that Carney failed to incorporate Holland’s record of mental illness into his defense, as Holland allegedly urged him to do.
Approximately a year after Carney & Bassil were fired, Holland, with new counsel, was convicted of first-degree murder.
Carney & Bassil asserts that Holland was aware of the revisions which were made to the History, that he approved them and that he was fully aware of the subsequent use made of the History in the public court filings on his behalf. Carney & Bassil also states that at the time of Carney’s MCLE presentation the History was part of the official case record and, thereby, in the public domain.
Holland’s complaint alleges that Carney & Bassil through the MCLE presentation violated his right to privacy by commercially appropriating his name without his consent in violation of G.L.c. 214, §3A (Count I). Holland also alleges defamation in the form of libel, slander and “conspiracy to commit defamation” (Counts III, IV and V, respectively). Finally, he complains that Carney & Bassil committed legal malpractice by the unauthorized disclosures and related failures pertaining to the History (Counts II and VI).
The Court ALLOWS the defendants’ summary judgment motion as to Counts I, III and V. The Court DENIES the motion as to Count IV and VI. The Court ALLOWS the motion also as to Count II (violation of the attorney-client privilege), but in ruling that the Holland’s claim for legal malpractice may proceed, the factual allegations of Count II are subsumed in the surviving Count VI.
Discussion
Commercial Appropriation (Count I)
As noted, Holland contends that Carney appropriated the value of his name when he submitted unredacted pleadings and documents relating to his case at the MCLE event without Holland’s consent. Holland claims that Carney did so for the purpose of enhancing his own reputation as a prominent criminal defense attorney by exploiting the exposure flowing from Holland’s high-profile case.
G.L.c. 214, §3A, provides, in pertinent part:
Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use.
Liability attaches only when a defendant uses the name or likeness of the plaintiff to “deliberately exploit its value” for a commercial use. Tropeano v. The Atlantic Monthly Co., 379 Mass. 745, 749 (1980). Where the defendant’s use of the plaintiffs name or likeness is merely incidental, there is no liability. Id.
While there may be instances where a lawyer’s participation in a continuing legal education program on topics of current interest could be such that he or she is determined to have unlawfully “appropriated” a client’s name for the lawyer’s self-serving commercial purpose, this is not such a case. The summary judgment record here is absent of any facts that would support that conclusion. The full text of Carney’s remarks are before the Court, and they are bereft of any suggestion of “advertising” or “purposes of trade” as contemplated by G.L.c. 214, §3A. Thus, judgment shall enter for Carney & Bassil on Count I.
*417 The Defamation (III, IV, and V) and Malpractice Counts (II and VI)
A fundamental question that is pertinent to both the defamation and the malpractice counts is whether Holland was aware of and authorized Carney & Bassil to revise and thereafter to incorporate the History in various public court filings on Holland’s behalf. As to this issue there is a material issue of fact. Holland is emphatic that he was unaware and that he did not authorize the revisions and the filings. The defendants are equally emphatic to the contrary. As such, summary judgment is inappropriate unless the substantive elements of the causes of action are absent in any event.
1. Libel (Count IV)
Holland’s libel claim is based upon Carney’s editing of the History and submission for publication to the MCLE. He claims that the removal of all references to his mental health history, hospitalization and diagnosis, as well as all references to Holland’s family history, changed the essential substance and meaning of the History and that, as a result, he was damaged.
In order to prevail on the libel claim, Holland must show that the defendants were “at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiffs reputation in the community, which either caused economic loss or is actionable without proof of economic loss.” White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004). A claim for libel is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003). See also Sharratt v. Housing Innovations, Inc., 365 Mass. 141 (1974).
The defendants claim that the information published in the MCLE book was true and, therefore, could not be defamatory. See Milgroom v. News Group Boston, Inc., 412 Mass. 9, 12 (1992). The defendants note that Holland himself wrote the History. Holland disputes, however, that the History, as submitted to the court and published by the MCLE was in his own words. He claims that Carney removed several key portions of the original History that referenced his history of mental illness, including various diagnoses, medications and hospitalizations. Holland submits that if these items had remained in the History, it would have cast him in a favorable light. Holland contends, however, that when revised out the mental health portions, the resulting History painted him as nothing more than a drug addict and drug dealer.
Liability may be imposed for words which are not inherently disparaging, but have that effect when viewed in context. Sharratt, 365 Mass. at 143-44. Whether the statement is reasonably susceptible to a defamatory meaning is a threshold question of law for the court. Foley v. Lowell Sun Publishing Co., 404 Mass. 9, 11 (1989). However, the court should only take the case away from a jury “when it is apparent that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense.” Sharratt, 365 Mass, at 143 (internal quotation omitted). If a publication is susceptible to both a defamatory and non-defamatory meaning, it presents a question of fact for a jury. King v. Globe Newspaper Co., 400 Mass. 705, 718 (1987).
The disputes regarding the editing of the History are material. If the jury credits Holland’s evidence regarding the editing of the History, it could reasonably find that the History as published in the MCLE book was defamatory. See Disend v. Meadowbrook School, 33 Mass.App.Ct. 674 (1992) (defendant may be liable for falsely describing plaintiff as “dishonest, diseased, insane, or bankrupt”); Brauer v. Globe Newspaper Co., 351 Mass. 53, 56-57 (1966) (statement that plaintiff was mentally retarded actionable).
The defendants also argue that Holland is a public figure because he “voluntarily inject[ed] himself or [was] drawn into a particular public controversy.” Shaari v. Harvard Student Agencies, 427 Mass. 129, 133 n.7 (1998). The defendants claim that Holland cannot show the requisite “actual malice,” or “knowledge of [the statements’] falsity or with reckless disregard to [their] truth or falsity.” Milgroom, 412 Mass. at 10-11. “Reckless disregard” has been defined as “serious doubts as to the truth” of a statement, id. at 11. The decision whether Holland is a public or private figure is a matter of law for the judge. Shaari, 427 Mass, at 133 n.7. However, Holland’s status as a high visibility defendant in a criminal case does not, by itself, render him a public figure, and the Court declines to consider him such at this juncture of the case. See generally, Wolston v. Reader's Digest Ass’n, 443 U.S. 157, 168 (1979).
Lastly, the defendants assert that Holland cannot show that his reputation has been damaged. Holland must show that the defendants employed “words which would tend to hold [him] up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.” Stone v. Essex County Newspaper, Inc., 367 Mass. 849, 853 (1975).
Carney & Bassil plausibly argues that Holland is libel-proof because at the time the allegedly defamatory statements were made, he was already under indictment for a vicious murder, and it cites Jackson v. Longscope, 394 Mass. 577 (1985), in support. The Jackson court found that the plaintiffs extensive criminal record, including multiple convictions for murder, rape, robbery, kidnapping, and assault, precluded him from claiming that the alleged libelous statements damaged his reputation. Id. at 582. Nevertheless, the Jackson court further cautioned *418 that, “(a)lthough we accept the principle that a convicted criminal may have such a poor reputation that no further damage to it was possible at the time of an otherwise libelous publication, it must be clear, as a matter of law, that the reputation of a plaintiff, even a convicted felon, could not have suffered from the publication of the false and libelous statements.” Id. at 580. And here, as noted earlier, Holland simply stood accused of the crime when the events at issue occurred.
There is insufficient evidence in the record that would put Holland on the same footing as the plaintiff in Jackson. Thus, Holland cannot be considered libel-proof as a matter of law.
2. Slander (Count V)
While libel refers to written words that are defamatory, slander refers to spoken words that are defamatory. Draghetti v. Chmielewski, 416 Mass. 808, 812 n.4 (1994). Holland has not shown that the defendants defamed him by oral statements. Although Carney, at the MCLE event, spoke of Holland’s case, he did not specifically refer to the contents of the History. And he did not otherwise make oral statements that would defame Holland. Accordingly, the slander count must be dismissed.
3. Conspiracy to Commit Defamation (Count III)
Holland has presented no evidence of agreements between the various defendants to defame him. Therefore, this count must be dismissed, as well.
Legal Malpractice (Count VI)
Holland claims that Carney committed legal malpractice by submitting privileged documents to the prosecutors, the court, and to MCLE without his permission. He claims that Carney’s actions caused him financial loss, emotional distress and mental anguish. Holland further claims that he repeatedly asked Carney to investigate his history of mental illness for purposes of incorporating it into his defense but that Carney continuously refused, with Carney allegedly stating to Holland that Holland’s mental illness was not relevant to the diminished capacity defense he had chosen for him. Overall, Holland alleges that the false picture of Holland that Carney & Bassil negligently permitted to be disseminated injured him, both directly and on account of the loss of $50,000 which Carney had been paid for his services.
To prevail on his claim for legal malpractice, Holland must show that (1) Carney failed to exercise reasonable care and skill in handling the matter for which he was retained; (2) Holland incurred a loss; and (3) Carney’s negligence was the proximate cause of the loss. Colucci v. Rosen, Goldberg, Slavet, Levenson, and Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987).
However, this is not a conventional legal malpractice claim where a party is complaining of the adverse outcome in a case due to his or her lawyer’s negligence. Rather, it has the substance of a more conventional negligence claim where the breach of the duty of care (failure to maintain confidentiality and inaccurate revision of the Histoiy) has caused damage (to his reputation and in the form of monetary loss). It also has features of a contract claim. “The gist of an action for damages resulting from the negligence of an attorney, ‘regardless of its form, is the attorney’s breach of contract.’ ” Fall River Savings Bank v. Callahan, 18 Mass.App.Ct. 76, 81-82 (1984), quoting Hendrickson v. Sears, 365 Mass. 83, 86 (1974). Thus, nominal damages can be awarded in a legal malpractice action. Id.
A violation of a legal canon of ethics or a disciplinary rule is not itself an actionable breach of duty to a client. It may, however, be evidence of the attorney’s negligence. Fishman v. Brooks, 396 Mass. 643, 649 (1986). See also Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass.App.Ct. 359, 368-69 (1981). Rule 1.6 of the Massachusetts Rules of Professional Conduct prohibits an attorney from revealing confidential information relating to the representation of a client unless the client consents after consultation or the attorney is impliedly authorized to do so in order to carry out the representation. S.J.C. Rule 3:07, R.Prof.Conduct 1.6. The attorney-client privilege is ordinarily strictly construed. In re Reorganization of Elec. Mut Uab. Ins. Co., 425 Mass. 419, 421 (1997).
As noted, Holland alleges that Carney revealed confidential information in the Histoiy to third parties without Holland’s consent. Holland in his affidavit alleges that Carney repeatedly rebuffed Holland’s request for Carney to investigate his histoiy of mental illness as possible support for a defense at trial. Additionally, Holland has submitted evidence that Carney promised to have Holland evaluated by a psychologist but failed to fulfill that promise. Based thereon, a triable issue of fact exists as to the professional negligence claim. [1]
D. Violation of Attorney-Client Privilege (Count II)
Holland has asserted a separate claim for violation of the attorney-client privilege. However, as recited above, Holland’s claim for legal malpractice is based, in part, on Carney’s alleged violation of the privilege. Because this count is subsumed in Count VI and because the privilege itself does not give rise to a separate cause of action, the count is dismissed.
ORDER
Carney & Bassil’s Motion for Summary Judgment is ALLOWED as to Counts I (commercial appropriation), II (attorney-client privilege), III (conspiracy to defame), and v. (slander), and it is DENIED as to Counts IV (libel) and VI (legal malpractice).

In a supplementary filing Carney & Bassil argued that Holland’s malpractice claim fails for the additional reason that, as a convicted criminal, Holland must show that he was actually innocent of his crimes in order to succeed, citing Glenn v. Aiken, 409 Mass. 704 (1991), and Labovitz v. Feinberg, ATI Mass.App.Ct. 306, 311 (1999). However, the rule of those cases is not germane to Holland’s claim because, as noted above, the malpractice complaint here is not predicated on the fact of Holland’s ultimate conviction. That outcome occurred while Holland was represented by counsel other than Carney & Bassil. Rather, the gravamen of the complaint is significantly more modest, i.e., damages arising from the unauthorized disclosures and from the simultaneous failure to have incorporated Holland’s alleged mental health issues into the defense.