IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 7, 2000

**RONALD L. DAVIS v. THE TENNESSEAN, ET AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 99-C1888     Barbara N. Haynes, Judge**

_____

**No. M1999-01602-COA-R3-CV - Filed August 21, 2001**

_____

The plaintiff filed a libel action against a newspaper, *The Tennessean*, its publisher and its editor, alleging his reputation had been harmed by a sentence in an article which stated that he had shot a man, when, in fact, his co-defendant had killed the victim. The trial court granted the defendants' motion to dismiss, finding the plaintiff to be "libel proof" in this matter because he had been convicted of aiding and abetting in the murder and incarcerated for the remainder of his life for the crime, "render[ing] any reputation he may have had virtually valueless." We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J.M.S., and WILLIAM C. KOCH, JR., J. joined.

Ronald L. Davis, Only, Tennessee, Pro se.

Alfred H. Knight, Nashville, Tennessee, for the appellees, The Tennessean, et al.

**OPINION**

The plaintiff, Ronald L. Davis, is an inmate of the Tennessee Department of Correction. He was convicted of aiding and abetting murder in the second degree, and sentenced to ninety-nine years in prison. His co-defendant, Tommy L. King, was convicted of felony murder and sentenced to death.

In June 1999, *The Tennessean*, a newspaper, published an article copyrighted by the Associated Press reporting the Tennessee Supreme Court's decision upholding the death sentence of Tommy King. *See King v. State*, 992 S.W.2d 946, 947 (Tenn. 1999), *cert denied*, 528 U.S. 1007 (1999). The Court's opinion stated, in pertinent part:

The defendant, Tommy Lee King, and his co-defendant, Ronald Davis, entered a tavern in May of 1982. The defendant fired a shot into the air and ordered the tavern's patrons and owner to lie down on the floor. The defendant robbed the patrons, rifled through the tavern's cash register and took the owner's car keys. Apparently, the defendant then without provocation shot the tavern owner, who was lying on the floor. . . . The tavern owner died approximately one week later as a result of the gunshot wound.

*Id.*

The Associated Press article in *The Tennessean* reported the decision of the Supreme Court upholding Mr. King's death sentence, including the following statements:

The state Supreme Court Monday upheld the death penalty for a man who killed a Maury County tavern owner in 1982 . . . [Two justices], in a separate opinion, said Tommy Lee King was guilty of first degree murder but should not be sentenced to death. . . . King was convicted in the robbery of tavern patrons and the shooting death of its owner.

. . .

King and co-defendant Ronald Davis entered a tavern, ordered patrons to lie on the floor and robbed them. Before leaving, Davis shot the owner as he lay on the floor.

The last sentence, factually attributing the shooting to Mr. Davis, was inaccurate and forms the basis of Mr. Davis's "Complaint for Libel and Slander." He alleged the defendants published this false statement with reckless disregard for the truth and with malice.

The defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, relying on the wire service defense for libel defendants which has been applied by courts of other states for a number of years. They asserted the article "was an Associated Press story which was republished by the defendants without substantial change, and without knowing or having reason to know that it contained a significant inaccuracy."[1] The defendants also asserted that, because the plaintiff was convicted of aiding and abetting the murder and had been sentenced to 99 years in prison, he was "'libel-proof,' having no reputation that is capable of being injured or substantially compensated for."

The trial court considered the written submissions of the parties and granted the defendants' motion to dismiss, stating in its order:

The plaintiff is currently serving a 99 year sentence in the Tennessee State

---

[1]Because of our disposition of this appeal on other grounds, we need not address the "wire service defense," i.e., whether reliance on a wire service negates the element of negligence.

Penitentiary as a result of aiding and abetting in the murder which is referred to in his complaint. The Court is of the opinion that this conviction of an infamous offense resulting in his incarceration for what may be the remainder of his life renders any reputation he may have virtually valueless and that he is in the eyes of the law "libel proof." Since he has no substantial reputation that could have been injured by the matter stated in the article of which he complains, his libel claim should be dismissed.

The plaintiff appeals, contending the trial court erred by dismissing his complaint.[2]

## I.

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness.

*King v. Danek Med., Inc.*, 37 S.W.3d 429, 453-54 (Tenn. Ct. App. 2000) (quoting *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## II.

The plaintiff claims that the defendants libeled him. Libel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). To establish a *prima facie* case of defamation, the plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for

---

[2]The plaintiff also claims the trial court erred by failing to follow its own local rules of practice. He contends that the trial court did not order the defendants to provide copies of "four (4) other state decisions and one Tennessee unpublished decision" which he claims they cited in support of their motion to dismiss, but did not provide to him. We decline to address this issue for two reasons. First, we find no indication that the issue was raised in the trial court, and issues may not be raised for the first time on appeal. *In re Valle*, 31 S.W.3d 566, 571 (Tenn. Ct. App. 2000). Second, even if the issue had been raised with the trial court, the record does not contain the supposedly objectionable document, and the "appellant has the primary burden to see that a proper record is prepared on appeal and filed in this court." *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989).

the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (relying on RESTATEMENT (SECOND) OF TORTS § 580 B (1977)).

However, "the basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto Parts*, 876 S.W.2d at 820. To be actionable, the allegedly defamatory statement must "constitute a serious threat to the plaintiff's reputation." *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983). Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved. *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 416, 419 (Tenn. 1978).

It is from these general principles establishing that the gravamen of a libel claim is injury to reputation that the concept of 'libel proof' parties has arisen. This doctrine essentially holds that "a notorious person is without a 'good name' and therefore may not recover for injury to it." ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER AND RELATED PROBLEMS 35 (Cum. Supp. 1998).

> If the purpose of defamation law is to guard against harm to reputation, a person without reputation has nothing for the law of defamation to protect. Whether for this reason, or because courts wish to rid their dockets of and spare defendants from nuisance suits by people with nothing legitimate to gain from such litigation, some courts have held that there are persons so notorious that they have no reputation on which to base a defamation claim. Their suits are necessarily frivolous. They are said to be "libel-proof."

*Id*. at 36.

A number of jurisdictions have adopted the "libel-proof" doctrine, and it has often been applied in a situation where the plaintiff's complaint is that the publication accused him of the wrong crimes. For example, in *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638 (2d Cir. 1975), plaintiff sued a book author and publisher who accused him of various criminal activities, denying participation in some of them. The court concluded he was guilty of other crimes attributed to him in the book and dismissed the action because he was libel-proof, explaining that term as "so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case. . . . " *Id*. at 639.

A federal court in this state has applied the doctrine in *Ray v. Time, Inc.*, 452 F. Supp. 618 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1280 (6th Cir. 1980), regarding a claim by James Earl Ray that a publication had libeled him as a "narcotics addict and peddler" and another defamed him by referring to him as a robber. *Id*. at 622. In examining this claim, the court stated:

> The Court is persuaded, in the light of all the circumstances in this cause and in the public record involved in the other cases mentioned, that plaintiff, James E. Ray, is

libel-proof, as that term was used in *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638, 639 (2d Cir. 1975). Ray, as Cardillo, is a convicted habitual criminal and is so unlikely to be able to recover damages to his reputation as to warrant dismissal of his libel claim in the light of First Amendment considerations attendant to publication of material dealing with his background and his criminal activities. *See also Urbano v. Sondern*, 370 F.2d 13 (2d Cir. 1966), cert. den., 386 U.S. 1034, 87 S. Ct. 1485, 18 L.Ed.2d 596 (1967), aff'g, 41 F.R.D. 355 (D. Conn. 1966) and *Urbano v. Fawcett Publications*, 370 F.2d 14 (2d Cir. 1966).

*Id.*

At least one other trial court in this state has applied the libel-proof doctrine to dismiss a libel action. *Rogers v. Jackson Sun Newspaper*, No. C-94-301, 1995 WL 383000 (Tenn. Cir. Ct. Jan. 30, 1995). In that case, the *Jackson Sun* had reported the criminal record of a defendant who had had charges of aggravated assault against him dismissed at trial. He sued the *Sun* for libel, claiming that, although he had a criminal record, it was less severe than the record published by the newspaper. The article stated that the plaintiff had convictions of "two aggravated robberies, one robbery, one assault to commit aggravated robbery, six weapons violations and a burglary conviction." The plaintiff contended that his actual record consisted of "convictions for third degree burglary, two robberies armed with a deadly weapon, one simple robbery and one assault with intent to rob."

The court dismissed the complaint, relying upon the "libel-proof" defense adopted in *Ray v. Time, Inc.*, and cases from other jurisdictions. The court held "as a matter of law, Plaintiff's reputation in the community at the time of the article's publication was so severely tarnished, he is 'libel-proof' and may not maintain this defamation action for an allegedly erroneous report of his criminal record." *Id.* at *1.

This court applied the "libel-proof" defense in *Coker v. Sundquist*, No. 01A01-9806-BC-00318, 1998 WL 736655, at *3 (Tenn. Ct. App. Oct. 23, 1998) (*perm. app. denied* May, 10, 1999), finding that, as a matter of law, the plaintiff "would suffer no damages to his reputation by the words alleged to have been spoken." In that opinion, this court examined the concept of injury to reputation, stating

Character is: The predisposition or habit, or aggregate of ethical qualities which belong to and distinguish an individual person; the general result of the one's distinguishing attributes. That moral predisposition or habit or aggregate of ethical qualities, which is believed attached to a person on the strength of the common opinion and report concerning him. Although "character" is often used in the sense of "reputation", the terms are distinguishable. "Character" is what a man is, and reputation is what he is supposed to be. "Character" depends on attributes possessed, and reputation on attributes which others believe one to possess. BLACK'S LAW DICTIONARY, FOURTH EDITION, p. 294.

The words, character and reputation have been used interchangeably because where character is relevant, it is proved by a "character witness" whose testimony must be confined to reputation. Thus, "character" must be proven by reputation and not by acts.

In *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc., et al.*, the appeal was from the dismissal of the suit of an employee of Bluff City against his employer for slander by accusing him of falsifying records. The Supreme Court dismissed the slander action as time-barred and said:

> The basis of an action for defamation, whether it be for slander or libel, is the defamation resulted in an injury to the person's character and reputation.

Clearly, the words "character and reputation" were intended to mean "reputation in respect to character, for character may be shown only by reputation."

In *Little Stores v. Isenberg*, the plaintiff obtained a jury verdict for damages from a false allegation of shoplifting. This Court affirmed and said:

> The "character" of an accused means his fixed disposition or tendency, as shown by his habits, through the manifestation of which his general reputation, good or otherwise, is obtained. *Keith v. State*, 127 Tenn. 40, 152 S.W. 1029 (1913).

The claim shows on its face that the claimant is a convicted murderer worthy of death. Therefore, neither his reputation nor his character could be impaired by the language allegedly spoken and published.

*Id.* at *4.

As the *Coker v. Sundquist* opinion makes clear, it is injury to one's reputation for good character with the public which is necessary for an actionable claim of defamation. A libel does not occur unless the words are "reasonably construable as holding the plaintiff up to public hatred, contempt, or ridicule." *Stones River Motors, Inc.*, 651 S.W.2d at 719. To constitute actionable defamation there must be impairment of reputation and/or standing in the community. *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979). To suffer injury to one's standing in the community, or damage to one's public reputation, one must possess good standing and reputation for good character to begin with.

In *Ali v. Moore*, 984 S.W.2d 224 (Tenn. Ct. App. 1998), this court considered, among other issues, whether a broadcast's depiction of plaintiff's attempts to bribe two persons was actionable as libelous when the plaintiff was later acquitted of one count of attempted bribery. Although we

did not use the term "libel-proof," we analyzed the injury to reputation on similar principles. This court held:

> Whether Ali, in fact, only attempted to bribe one of these persons is immaterial in light of these circumstances. Since Ali was convicted of one count of attempted bribery, his reputation was already tarnished. We do not believe that Ali's reputation suffered further disgrace for being accused of twice committing attempted bribery in light of the fact that he was convicted of rape and one act of attempted bribery.

*Ali*, 984 S.W.2d at 230.

Thus, Tennessee courts have held that a plaintiff in a libel action must be able to show that his or her standing in the community and his public reputation for character has been injured by the inaccurate statement and, further, must have suffered real or actual damages due to that loss of standing or reputation. Mr. Davis has claimed his "life has been put into danger by other inmates, his reputation as a paralegal injured, [and he has] suffered humiliation, severe emotional distress and mental anguish, family bonding, marriage proceedings, interference with criminal appeal, ridicule, etc." He sought, among other relief, $700,000 in compensatory and punitive damages.

Although Mr. Davis alleges he suffered unjustified humiliation because of the publication, he does not allege his public reputation has been injured. We conclude he cannot show such injury because, at the time of the publication, he was serving a ninety-nine year sentence for aiding and abetting the murder which is the subject of the article and his complaint. He participated in the crime which resulted in the murder. His character reputation with the public was established and could not be harmed by inaccurate attribution to him of conduct which was part of the crime in which he participated. His continued incarceration for a long time after the publication renders actual damage, with regard to his standing in the community, as a result of the article unlikely. *See Coker*, 1998 WL 736655, at *3-4 (inmate had "reputation . . . of a murderer" which could not be harmed by inaccurate exaggeration).

Thus, we agree with the trial court that Mr. Davis's conviction resulting in incarceration for 99 years "renders any reputation he may have virtually valueless and that he is in the eyes of the law 'libel-proof.'"

III.

We affirm the trial court's dismissal of the plaintiff's complaint, and remand the case for such further proceedings as may be necessary. Costs are taxed to the appellant, Ronald L. Davis, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE