IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 7, 2005

## THOMAS ALBERT DOLAN v. BRUCE POSTON, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 98C-3000     Marietta Shipley, Judge**

_____

### No. M2003-02573-COA-R3-CV - Filed September 29, 2005

_____

The plaintiff is a former University of Tennessee faculty member. He was dismissed from his position after the defendant corporate officer circulated a letter to government officials accusing him of using numerous deceptions in the procurement of a grant from the United States Department of Energy. The plaintiff's *pro se* defamation lawsuit named the defendant in both his individual and his corporate capacities. The trial court dismissed the claim against the defendant in his individual capacity under Tenn. R. Civ. P. 12.02(6) and certified the dismissal as final under Tenn. R. Civ. P. 54.02 so it could be appealed. We reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Travis Hawkins, Nashville, Tennessee, for the appellant, Thomas A. Dolan.

Thomas Anthony Swafford, David L. Johnson, Nashville, Tennessee, for the appellees, Bruce E. Poston, and East Tennessee Banking Corp. and Environmental Ink, Inc.

### OPINION

#### I. BACKGROUND

This case arose from a dispute over a federal grant for ink recycling technology. Because the case is still at the pleading stage, the following brief account is totally derived from the various versions of the plaintiff's Complaint and the allegedly defamatory letter drafted by the defendant.

The plaintiff, Thomas A. Dolan, is an engineer who held a faculty position with the University of Tennessee Center for Industrial Services (UT-CIS) for over seven years. According to his complaint, he had built a good reputation as a process engineer at Dupont over a twenty-year period before going to UT-CIS, where he did outstanding work in the field of waste reduction counseling and earned a solid reputation among his peers and supervisors.

At some point, Mr. Dolan began working with an inventor named Frank Prasil, who had developed an ink recycling process called Lithographic Ink Reformulation Technology (LIRT). Mr. Dolan gave Mr. Prasil some money to attend a grant meeting at the U.S. Department of Energy (DOE) in Washington, D.C. With extensive assistance from Mr. Dolan, Mr. Prasil subsequently applied for and received a $390,000 DOE grant for his LIRT technology. Mr. Dolan apparently advised him on his grant application and certified the correctness of the data in his presentation.

One of the threshold requirements for obtaining the type of grant that Mr. Prasil received was proof that the applicant had an industrial partner and matching equity funds in place. Mr. Prasil had approached defendant East Tennessee Banking Corp. (ETB) for funding in October of 1995. He and Mr. Dolan believed that they had ETB's commitment for the matching funds, and they represented this commitment as a fact to the Tennessee Department of Environment and Conservation (TDEC) which was DOE's partner in the grant program.

However, on November 30, 1995, ETB's president sent Mr. Dolan a certified letter stating that it was withdrawing financial support. Mr. Prasil allegedly subsequently obtained the agreement of an organization called Venture Alliance to commit private capital to his project. Mr. Dolan claims that some time later, "upon information and belief," ETB incorporated defendant Environmental Ink, Inc., which "set about pursuing manufacturing processes that were similar, if not identical, to those invented by Mr. Prasil." Mr. Dolan and Mr. Prasil objected and took steps to try to get Environmental Ink to cease and desist.

Subsequent events form the basis of Mr. Dolan's lawsuit. Bruce Poston, president of both ETB and Environmental Ink, wrote a twenty-four page letter to DOE with accompanying exhibits, asking for a formal investigation into the grant to Mr. Prasil. Copies of the letter were sent to TDEC and to UT-CIS. The letter claimed that Mr. Dolan and Mr. Prasil had intentionally defrauded the federal government and described in specific detail numerous alleged irregularities in the grant application submitted by Mr. Prasil, in the supporting documentation for that application, and in the subsequent use of grant funds.

The alleged irregularities included misrepresentations as to Mr. Prasil's business experience, falsified test data, representations of financial support which did not exist, and grossly distorted cost and benefits information. Mr. Poston alleged that Mr. Dolan was the author of most of the misleading information and that the grant application was successful because the information on it was furnished by UT-CIS, an "independent source" that carried the imprimatur of the University of Tennessee.

The letter further stated that Mr. Poston believed, on the basis of information from "reliable sources," that Mr. Dolan had acted out of self-interest and that he had a private financial arrangement with Mr. Prasil for his own financial benefit. The letter was printed on Environmental Ink stationery, was signed "Bruce E. Poston, in his corporate capacity on behalf of ETB Corp. and Environmental Ink, Inc.," and was dated December 15, 1997.

According to Mr. Dolan, Mr. Poston gave additional false information about him to University of Tennessee officials during a formal investigatory review on January 30, 1998, and possibly on other occasions as well. Mr. Dolan was dismissed from his position at UT-CIS on June 15, 1998. Mr. Prasil's grant was withdrawn as well.

## II. PROCEEDINGS IN TRIAL COURT

On November 3, 1998, Mr. Dolan filed a *pro se* Complaint for libel, slander, and fraud in the Circuit Court of Davidson County. He named as defendants Bruce E. Poston, both in his individual capacity and in his capacity as an officer of ETB and Environmental Ink, Inc., and the two corporations themselves. The Complaint focused on damages, but did not include any specific information about the substance of the allegedly defamatory publication.

The defendants filed a Motion to Dismiss the Complaint for failure to state a claim under Tenn. R. Civ. P. 12.02(6), because it did not allege any specific statements, written or oral made by the defendants. The Motion also asserted that the Complaint failed to allege fraud with the particularity required by Tenn. R. Civ. P. 9.02, and that it "fails to allege any actionable conduct by Bruce Poston in his capacity as an individual."

Mr. Dolan filed a response which stated in part:

Additionally the Defendant seeks to dismiss claims against Mr. Bruce Poston as an individual based on the fact that the information he supplied leading to damages was done so only in the course of his acting in his corporate capacity for the ETB Corporation and Environmental Ink Inc. It is true that he acted so in the course of his corporate capacities. However, Mr. Poston also provided like and similar damaging information in person to the Plaintiff's employer as an individual during the first half of 1998, just shortly before the Plaintiff's employer made the decision to terminate the Plaintiff. Again, particulars of such information will be aired in the hearing, and therefore, the Plaintiff opposes the Defendants plea to dismiss Mr. Poston as an individual.

Thus, Mr. Dolan distinguished between Mr. Dolan's authoring and distributing the letter, on the one hand, and his appearance and statements before University officials investigating the charges made in that letter, on the other. He acknowledged the first were done in Mr. Poston's capacity as a corporate officer. However, he alleged the second were done "as an individual." In later filings, Mr. Dolan continued to make this distinction.

-3-

Following an initial hearing, the trial court ordered the plaintiff to file an amended complaint stating a cause of action against the defendants by March 19, 1999, the date of the next scheduled hearing. The court also stated it would rule at that hearing, if necessary, on the defendants' motions to dismiss Mr. Poston in his individual capacity "based on Plaintiff's allegations in his original complaint alleging that Mr. Poston acted on behalf of ETB Corp. and Environmental Ink, Inc. in his corporate capacity."

Mr. Dolan's amended complaint briefly stated the substance of the statements he believed to be actionable.[1] In this amended complaint, Mr. Dolan continued to distinguish between publication of the letter and Mr. Poston's participation in the University's investigation, wherein he is alleged to have made false and defamatory statements leading to Mr. Dolan's loss of employment. "The statements were delivered as personal statements to University of Tennessee Officials, and are so documented as such." On April 12, 1999, the court dismissed with prejudice all claims against Bruce Poston in his individual capacity and all claims of fraud.

A period of status conferences, case management conferences, and referral to mediation ensued. After the final conference, a scheduling order was entered on May 16, 2001, allowing amendment of pleadings, and Mr. Dolan filed two Amendments to Complaint and a new complaint on the same day. In essence, in these documents Mr. Dolan expressed his opposition to dismissal of Mr. Poston in his individual capacity, although that dismissal had occurred two years earlier, and asked that Mr. Poston be reinstated as an individual defendant. He again referred to Mr. Poston's statements to University officials as the basis of his claim that Mr. Poston was liable individually. He also stated that University officials had "reviewed" Mr. Poston as an individual and not representing any organization.

After motions to dismiss were filed by the remaining defendants, the court dismissed the slander claims.[2] In response to the defendants' repeated request for a more definite statement, the court gave Mr. Dolan additional time to once again amend his complaint. In the same order, dated September 7, 2001, the trial court noted that all claims against Mr. Poston in his individual capacity had previously been dismissed with prejudice.

On November 13, 2001, the remaining defendants moved the court to dismiss the surviving claims or to stay further proceedings in the case pending resolution of a criminal case that had been filed in the United States District Court for the Eastern District of Tennessee, styled *United States of America v. Frank J. Prasil & Thomas J. Dolan.* The parties ultimately agreed to the stay.

_____

[1]Under prior law, a plaintiff filing suit for defamation was required to set forth in his Complaint the exact language claimed to be defamatory. *Street v. National Broadcasting Co.*, 512 F.Supp 398 (E.D. Tenn. 1977). The law has since been relaxed to allow the plaintiff to merely allege the gist of the defamatory communication. Tenn. R. Civ. P. Rule 8.01; *Handley v. May*, 588 S.W.2d 772, 774 (Tenn. Ct. App. 1979).

[2]The motion was based on the passing of the six months statute of limitations, and we presume the dismissal was also.

Mr. Dolan finally retained an attorney in this case. The attorney filed a Rule 60.02 motion to have Mr. Poston reinstated as an individual defendant, together with a proposed Amended Complaint and motion to amend. This document for the first time quoted directly from the twenty-four page letter from which this dispute arose. The trial court denied the plaintiff's Rule 60.02 motion.

On August 6, 2003, the defendants filed a motion asking the trial court to designate its April 12, 1999, order a final judgment as to Mr. Poston, "there being no just reason for delay." Tenn. R. Civ. P. 54.02. Mr. Dolan filed a response in opposition to the motion, to which was attached a copy of the actual letter from which this case arose. The trial court granted the motion. This appeal followed. The only issue in this appeal is the dismissal of Mr. Poston in his individual capacity.

### III. THE STANDARD OF REVIEW

A Tenn. R. Civ. P. 12.02(6) motion only tests the legal sufficiency of the complaint, not the strength of the plaintiff's proof. For the purposes of the motion, the defendant admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Davis v. The Tennessean,* 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 453-54 (Tenn. Ct. App. 2000).

In considering a motion to dismiss, the trial court should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn.1994). On appeal, we take all allegations of fact in the plaintiff's complaint as true, and review the lower court's legal conclusions *de novo* with no presumption of correctness. *Davis*, 83 S.W.3d at 128.

The only issue before us is whether Mr. Poston can be held personally liable if Mr. Dolan proves he has been defamed. For the purposes of this appeal, we are obligated to credit Mr. Dolan's assertion that he lost his job and suffered other damages as a result of Mr. Poston's actions, which are alleged to be the authoring and sending of the letter and participation in the University's resulting investigation.

### IV. DEFAMATION

To establish a prima facie case of defamation, the plaintiff must prove that (1) the defendant published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain

the truth of the statement.[3] *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *Davis*, 83 S.W.3d at 128.

"[T]he basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Davis*, 83 S.W.3d at 128, quoting *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). To be actionable, the allegedly defamatory statement must "constitute a serious threat to the plaintiff's reputation." *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983). Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved. *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 416, 419 (Tenn. 1978).

While the law of defamation applies generally to protect a person's reputation within the community, the law is especially concerned about defamatory statements that tend to prejudice a party in his business, trade, office or profession. *See, e.g.*, *Smith v. Fielden*, 326 S.W.2d 476, 479 (Tenn. 1959); *McWhorter v. Barre*, 132 S.W.3d 354, 364-365 (Tenn. Ct. App. 2003); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 112 at 790 (5th Ed. 1984) ("The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person.")

Liability for defamation normally extends to every individual who has taken a responsible part in publishing the defamatory material. In the case of a libel printed in a newspaper, even the printer and the carrier of the paper can be held liable, if it can be proven that they were aware of the libel. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 113 at 799 (5th Ed. 1984). As a practical matter, of course, the requirement that the defendant be aware of the libel also protects innocent individuals from such liability. *Knoxville Publishing Co. v. Taylor*, 215 S.W.2d 27, 30 (Tenn. Ct. App. 1948).

Mr. Dolan's *pro se* Complaint, as amended, while inartfully drafted, alleged facts which if proven would be sufficient to establish the elements of defamation. He identified Mr. Poston as the author and source, alleged the statements were false, and alleged he suffered loss of employment because of the statements in the letter and made to his employer.

### V. IMMUNITY OF CORPORATE OFFICERS

Mr. Poston argues that he cannot be held personally liable for the statements he made in the letter he composed and distributed or the oral statements he made to University officials because of the personal immunity granted to corporate officers in the discharge of their duties by Tenn. Code Ann. § 48-18-403(d). That statute provides that an officer of a corporation "is not liable for any

---

[3] Only statements that are false are actionable as defamation. The truth of the statements made is thus a near-absolute defense to a defamation charge. *West v. Media General Convergence, Inc.,* 53 S.W.3d 640, 645 (Tenn. 2001); *Ali v. Moore*, 984 S.W.2d 224, 230 (Tenn. Ct. App. 1998); *Stones River Motors, Inc. v. Mid-South Publishing Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983). Under defamation law, "publication" is a term of art that simply means communication of defamatory matter to a third person.

action taken as an officer, or any failure to take any action, if the officer performed the duties of office in compliance with this section." As this language indicates, the remainder of the statute establishes standards of conduct necessary to trigger the immunity. The remainder of the statute reads:

> **Discharge of duties. --** (a) An officer with discretionary authority shall discharge all duties under that authority:
>
> (1) In good faith;
>
> (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
> (3) In a manner the officer reasonably believes to be in the best interest of the corporation:
>
> (b) In discharging such duties, an officer is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
>
> (1) One (1) or more officers or employees of the corporation (or a subsidiary of the corporation) whom the officer reasonably believes to be reliable and competent in the matters presented; or
>
> (2) Legal counsel, public accountants, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence.
>
> (c) An officer is not acting in good faith if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.

Prior to enactment of Tenn. Code Ann. § 48-18-403 in 1986, in Tennessee corporate officers enjoyed no protection from tort liability even if acting within the scope of their employment while committing the tort. In 1971, the Tennessee Court of Appeals in *Cooper v. Cordova Sand and Gravel Company*, 485 S.W.2d 261, (Tenn. Ct. App. 1971), held that the following quotation from 19 Am.Jr.2d 778 correctly stated the law:

> If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort.

485 S.W.2d at 271-72. *See also Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590-91 (Tenn. Ct. App. 1980) ("officer or director of a corporation who commits or participates in the commission of a tort is likewise liable to third parties regardless of the liability of a corporation").

However, after enactment of Tenn. Code Ann. § 48-18-403, a corporate officer may raise as a defense immunity from tortious acts if the conditions set out in the statute are met. In other words, the immunity granted by the statute is conditional, not absolute. When a corporate officer relies on Tenn. Code Ann. § 48-18-403 for immunity in his or her individual capacity, the question becomes whether that officer was performing duties of a corporate officer in good faith and in furtherance of the perceived best interest of the corporation. *Nelson v. Martin*, 958 S.W.2d 643, 650 (Tenn. 1997) (overruled on other grounds, *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002)). The critical factors in considering this question are "intent, motive or purpose, and means." *Id.*, quoting *Forrester v. Stockstill,* 869 S.W.2d 328, 333 (Tenn. 1994). These are, of course, questions of fact.

Once it is established that the action at issue was taken by a corporate officer acting as a corporate officer, the burden is on the plaintiff to prove that the officer was not acting in good faith in furtherance of the best interest of the corporation or, in other words, that the circumstances triggering the protection of Tenn. Code Ann. § 48-18-403 (d) are not present. *Nelson*, 958 S.W.2d at 650.

In the case before us, Mr. Poston was dismissed on a motion to dismiss; he did not file affidavits or other evidence which would have been appropriate in support of a motion for summary judgment. Therefore, there is no evidence regarding his compliance with Tenn. Code Ann. § 48-18-403 (d). In his several *pro se* complaints, Mr. Dolan did not allege that Mr. Poston had not acted in good faith as a corporate officer or in furtherance of the corporations' best interests. He alleged that Mr. Poston was the president of both defendant corporations, that Mr. Poston had signed the allegedly defamatory letter,[4] and consistently alleged that all the defendants committed the tortious acts complained of. Importantly, Mr. Dolan also essentially withdrew any claim that the drafting and distribution of the letter was not done by Mr. Poston in his capacity as a corporate officer.

It was only after Mr. Dolan obtained counsel and four years after the trial court's original ruling dismissing all claims against Mr. Poston individually that any pleading or attempted pleading addressed Mr. Poston's conduct regarding the letter separately from that of the corporation. In his

---

[4]The letter containing the allegedly defamatory statements was finally submitted by Mr. Dolan as an attachment to his opposition to Mr. Poston's motion for the court to certify as final its order dismissing Mr. Poston. The letter was signed "Bruce E. Poston, In his corporate capacity on behalf of ETB Corp and Environmental Ink, Inc." Regardless of what the signature may or may not prove, for our purposes, it is sufficient that Mr. Dolan had earlier alleged that the letter was signed by Mr. Poston and that Mr. Poston was an officer of the corporate defendants.

proposed Second Amended Complaint,[5] Mr. Dolan alleged that Mr. Poston's allegedly tortious acts were committed outside the course and scope of his authority.[6] This allegation, however, was used to support an allegation that the corporate veil should be pierced and Mr. Poston held individually liable. It did not address the factors in Tenn. Code Ann. § 48-18-403.

Mr. Dolan was given the opportunity to amend his complaint, after notice of the defendants' objections to it regarding Mr. Poston's individual liability, to make sufficient allegations that Mr. Poston could be held liable individually. With regard to the acts of drafting and distributing the letter, Mr. Dolan did not make any such allegations and in essence agreed with the motion to dismiss. However, Mr. Dolan asserted then, and continued to assert, allegations that Mr. Poston acted individually in making statements to University officials. Although not specific, those statements are enough to allege that Mr. Poston was not entitled to corporate officer immunity. We are required to read Mr. Dolan's Complaint liberally and to afford it the benefit of all inferences that can be reasonably drawn from the facts plead. *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004).

Consequently, we must reverse the dismissal and remand so that evidence could be had, through summary judgment procedure or otherwise, on the elements required by Tenn. Code Ann. § 48-18-403, including the exercise of reasonable care, the presence of good faith, and the legitimate interest of the corporations Mr. Poston represented in the action taken.

## VI.

We reverse the order of the trial court and remand the case to the Circuit Court of Davidson County. The costs on appeal are taxed equally between the appellant, Thomas A. Dolan, and the appellees, Bruce E. Poston, East Tennessee Banking Corp., and Environmental Ink, Inc.

_____
PATRICIA J. COTTRELL, JUDGE

---

[5]This proposed amended complaint was filed with a motion to amend. Although we find no order denying the motion to amend the complaint, the trial court's other actions render an attempt to amend to include Mr. Poston as a defendant in his individual capacity moot. The trial court denied Mr. Dolan's motion to set aside its earlier order dismissing Mr. Poston in his individual capacity and certified that order as final for purposes of appeal.

[6]The amended pleading also alleged that both corporate defendants had been administratively dissolved.