IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2019 Session

## MICHAEL BENANTI v. JAMIE SATTERFIELD ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-414-17          Kristi M. Davis, Judge**

_____

**No. E2018-01848-COA-R3-CV**

_____

This is a defamation case. Michael Benanti (plaintiff) was convicted of committing multiple felonies, including: armed bank extortion, kidnapping, and carjacking. He is serving four consecutive life sentences at a federal prison in California. Shortly after his incarceration, plaintiff filed a complaint against Jamie Satterfield, the Knoxville News Sentinel, and USA Today (defendants), seeking $3,000,000 in damages. Plaintiff alleged that defendants defamed him by falsely reporting that the FBI suspected plaintiff of committing additional crimes, including murder. The trial court granted defendants' motion to dismiss and subsequently denied plaintiff's motion to alter or amend. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Michael Benanti, Atwater, California, appellant, pro se.

Richard L. Hollow, Knoxville, Tennessee, for the appellees, Jamie Satterfield, Knoxville News Sentinel, and USA Today.

### OPINION

### I.

On November 17, 2017, plaintiff filed a complaint against defendants for "defamation of character, slander, [and] libel." Because this case was dismissed pursuant to Tenn. R. Civ. P. 12, we must accept plaintiff's factual allegations as true. Accordingly, we set forth plaintiff's factual allegations verbatim:

Jamie Satterfield of the Knoxville News Sentinel wrote several full featured articles detailing how the FBI alleged that I killed Natasha Bogoev. She writes about motive, opportunity, cover up of the crime, and fills in details with no factual basis.

Moreover I personally exchanged emails with Ms. Satterfield and informed her that her facts were wrong. I requested a retraction or at least she check her facts before she continue writing fabricated lies. The information I provided her was 1. Her death was ruled a suicide by the police and coroner. 2. She bought the gun that day, alone. 3. She checked into a hotel room on the 2nd floor with no opening windows and locked the room from within. 4. She left a suicide note. 5. Kathy McGrath was the last person to see her alive. 6. Government star witness told FBI I was in North Carolina at the time of her death.

Ms. Satterfield armed with this knowledge continued to write several more articles (in excess of 30 articles altogether) where she continued to spread this knowing false accusation. See Exhibit – some of the articles she wrote, Exhibit A 1-5.

To a lesser extent she also wrote that my company was a scam and that I stole from it as well as placed bank robbery money into it. None of these claims were proven during the criminal trial.

Ms. Satterfield's blatant disregard for the truth and knowing deceit on the public has affected my life in a most profound way. Including but not limited to alienation & abandonment by loved ones or supporters, a poisoning of the criminal jury pool, emotional & mental stress & anguish, pain & suffering beyond explaining and made it difficult and obstructed my ability to defend myself in the criminal trial, loss of reputation.

Plaintiff attached excerpts from online articles published by defendants before, during, and after plaintiff's criminal trial. Plaintiff underlined dozens of phrases and sentences in these articles. In accordance with our duty to liberally construe pleadings filed by a pro se litigant, see *Moorhead v. Allman*, No. M2009–01822–COA–R3–CV, 2011 WL 676017, at *5 n.2 (Tenn. Ct. App., filed Feb. 24, 2011), we presume that the

- 2 -

underlined portions are the allegedly defamatory statements.  The following is a representative sample of those allegedly defamatory statements:[1]

> Benanti stands accused of plotting a series of violent crimes in six states and carrying out those misdeeds in four of them, including Tennessee.  Those crimes include carjacking, kidnapping, bank robbery and extortion.  He is accused of kidnapping three East Tennessee bank officials and their families – one in Oak Ridge in April 2015; one in Knoxville in July 2015; and one in Elizabethton in October 2015 – and of similar extortions in Pennsylvania and Connecticut.
>
> The FBI alleges Benanti, an ex-con, recruited Brian Witham, whom he met in federal prison, to rob banks and a grocery store, steal cars and hold families hostage to force the bank employees to rob their employers – all to get money to funnel back into a sham business from which Benanti was embezzling.  The FBI also  has alleged Benanti killed his girlfriend . . . , who found out about his crimes, and staged her death to look like a suicide.  He has not been charged in that death.
>
> *      *      *
>
> In the kidnappings, entire families, including children, were held hostage.  Guns were pointed at the heads of a baby and a toddler while their bound parents watched helplessly.  A fake bomb was strapped to the elderly mother of one extortion victim.

Exhibit A-3 (underlining in original).

> Benanti and Witham met in federal prison in the 1990s, both serving time for robberies.  When Benanti was freed in 2008, he launched Prisoner Assistant, a firm he said would help future ex-cons by investing money for them while they were behind bars and teaching them financial skills.  Witham joined the firm upon his release.

---

[1] We provide only a representative sample in order to avoid redundancy.  We also include unchallenged statements to provide additional context.

The Wall Street Journal profiled the firm in 2014 – unaware the company was, according to the FBI, a sham from which Benanti was stealing. Witham has told authorities Benanti was desperate to keep up the sham and concocted the bank extortion plot as a way to keep Prisoner Assistant afloat. The FBI has alleged Benanti's girlfriend, Natasha Bogoev, discovered his thievery and, perhaps, the hostage-takings, so he killed her inside a hotel in a small town in Pennsylvania, staged it as a suicide and had her body cremated. He has not been charged in the death, because authorities have no body.

Exhibit A-1, A-2 (underlining in original).

[Assistant U.S. Attorney David] Lewen and the FBI suspect, but cannot yet prove, that Benanti might well be a killer.

* * *

Police quickly ruled [Natasha Bogoev's] death a suicide. Benanti convinced her brother to have her cremated. Benanti spread her ashes in the Bahamas and then dashed off for a tryst with his stripper girlfriend.

The FBI would later learn the gun found in the hotel room had been fired twice. A pillow showed the imprint of a head surrounded by blood splatter, but Bogoev's body was found on the floor. No autopsy was conducted. Now, none can be. Benanti still bristles over the FBI's suspicion he killed Bogoev or hired someone to do it, and it's unlikely, given his convictions last week, the case would be reopened.

Exhibits A-4, A-6 (underlining in original).

The articles purport to rely on various sources, including: "prior court records," "trial brief[s]" filed by prosecutors, "FBI documents," "FBI records," and "hundreds of pages of FBI affidavits made public last week[.]" Notably, plaintiff does not take issue with defendants' reporting about the crimes for which he was ultimately convicted. Instead, plaintiff argues that defendants defamed him by reporting that the FBI suspected plaintiff of committing additional crimes, including murder.

- 4 -

Defendants filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss and a memorandum of law in support thereof. Defendants also attached a copy of the judgment entered against plaintiff in his criminal trial. Defendants did not attach the underlying source material for their articles. In their motion to dismiss, defendants argued:

> 1. That the [p]laintiff, being a public figure, has not pled and cannot prove actual malice; that is, knowledge of falsehood or reckless disregard by clear and convincing evidence.

> 2. Any publications complained of are protected by [the fair-reporting] privilege and, therefore, not actionable as a matter of law.

> 3. The [p]laintiff, has no reputation which can be damaged and is, therefore, libel-proof and cannot, as a matter of law, establish the requisites for a damage claim.

Plaintiff did not respond to defendants' motion. Accordingly, on February 23, 2018, the trial court dismissed the complaint with prejudice. On March 8, 2018, plaintiff filed a "motion to reinstate lawsuit," with the court construed as a motion to set aside the order of dismissal. In his motion, plaintiff explained that he was never served with defendants' motion to dismiss. Apparently, the letter containing defendants' motion was withheld from plaintiff because it was delivered to the prison in the wrong color envelope. The trial court provided plaintiff a copy of defendants' motion to dismiss and gave plaintiff additional time to file a written response.

Plaintiff filed a response to the motion to dismiss and attached several exhibits, including Ms. Bogoev's suicide note, documentation relating to FBI witness interviews, and transcripts of witness testimony from plaintiff's criminal trial. Plaintiff argued that he was not a public figure; that he sufficiently pled actual malice; that defendants could not rely on the fair-reporting privilege; and that plaintiff was not libel-proof. On July 11, 2018, the trial court ruled that plaintiff's arguments "do not warrant a reversal of the [c]ourt's decision to grant the motion to dismiss." Accordingly, the court denied plaintiff's motion to set aside the order of dismissal.

On July 30, 2018, plaintiff filed a "motion for reconsideration and hearing." On October 9, 2018, before the trial court ruled on that motion, plaintiff filed a notice of appeal. This Court remanded the case to the trial court for the purposes of ruling on plaintiff's July 30, 2018 motion, which, if construed as a motion to alter or amend, would extend the time for filing plaintiff's otherwise untimely notice of appeal. On May 9, 2019, the trial court entered an order denying plaintiff's motion, which the court did construe as a motion to alter or amend. The appeal is now properly before this Court.

## II.

Plaintiff raises the following issues, which we have slightly restated:

>Whether the trial court committed reversible error by granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

>Whether the trial court violated plaintiff' constitutional right to due process by denying plaintiff a hearing.

>Whether the trial court committed reversible error by not advising plaintiff that he could amend his complaint.

## III.

The trial court dismissed plaintiff's complaint pursuant to Tenn. R. Civ. P. 12.02(6).[2]

>A motion to dismiss [pursuant to Tenn. R. Civ. P. 12.02(6)] "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." ***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426 (Tenn. 2011) (citation omitted). The relevant and material allegations of the complaint are taken as true, and the plaintiff is afforded the benefit of all reasonable inferences that may be drawn from the allegations. ***Webb***, 346 S.W.3d at 426; ***Brown v. Tenn. Title Loans, Inc.***, 328 S.W.3d 850, 854 (Tenn. 2010). To survive a motion to dismiss, " '[t]he facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level.' " ***Webb***, 346 S.W.3d at 427 (quoting ***Abshure v. Methodist Healthcare–Memphis Hosps.***, 325 S.W.3d 98, 104 (Tenn. 2010)). "[L]egal arguments or 'legal conclusions' couched as facts" are not taken as true. ***Moore-Pennoyer v. State***, 515 S.W.3d 271, 276 (Tenn. 2017) (quoting ***Webb***, 346 S.W.3d at 427). We apply de novo review to the lower court's legal conclusions, including its

---

[2] Although it appears that "matters outside the pleading [were] presented to and not excluded by the court," neither party argues that the trial court should have converted defendants' motion to dismiss into a motion for summary judgment. *See* Tenn. R. Civ. P. 12.02. Accordingly, the issue is waived. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

ruling on the legal sufficiency of the complaint. ***Webb***, 346
S.W.3d at 426.

***Estate of Haire v. Webster***, 570 S.W.3d 683, 690 (Tenn. 2019). In reviewing the trial court's dismissal, we consider only the complaint, the attached exhibits, and the judgment entered in plaintiff's criminal trial. *See* ***Burns v. State***, No. E2018-02174-COA-R9-CV, 2019 WL 6341041, at *3-4 (Tenn. Ct. App., filed Nov. 26, 2019) (holding that media reports attached to plaintiff's complaint and integral to plaintiff's defamation claim were not "matters outside the pleading"); *see* ***id.*** (allowing judicial notice of court orders when ruling on a motion to dismiss). We exclude from consideration all other matters outside the pleading. *See* Tenn. R. Civ. P. 12.02.

We are also mindful that this case involves a pro se litigant. "Parties who choose to represent themselves are entitled to fair and equal treatment. ***Irvin v. City of Clarksville***, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (citations omitted). "However, they are not excused from complying with applicable substantive and procedural law . . . and they must follow the same procedural and substantive law as the represented party." ***Id.***

## IV.

## A.

The first issue is whether the trial court committed reversible error by granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff's complaint purports to assert claims of "defamation of character, slander, [and] libel." Giving effect to the substance rather than the form of the pleading, we construe the complaint as asserting a claim for libel, i.e., written defamation. *See* ***Burns v. State***, No. E2018-02174-COA-R9-CV, 2019 WL 6341041, at *1, n.1 (Tenn. Ct. App. Nov. 26, 2019) (citation omitted) ("Libel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation."). In order to establish a prima facie case of libel, a plaintiff must prove that the defendant published an unprivileged, false, and defamatory statement concerning the plaintiff with the requisite degree of fault. *See* Rest. (Second) of Torts § 558.

We first consider defendants' reliance on the "libel-proof" plaintiff doctrine. Courts developed this common law doctrine as a means of dealing with "plaintiffs who challenge published statements that do not in fact damage their already sullied reputations." Harvard Law Review Association, *The Libel-Proof Plaintiff Doctrine*, 98 Harv. L. Rev. 1909, 1909 (1985). The doctrine is typically invoked in two types of situations: (1) when "previous publicity or criminal convictions have so tarnished the plaintiff's reputation that he should be barred, as a matter of law, from receiving a damage award"; and (2) when "an article or broadcast contains highly damaging

statements, but the plaintiff challenges only a minor assertion in the communication as false and defamatory." *Id.* The rationale for the libel-proof plaintiff doctrine has been described as follows:

> Because libel-proof plaintiffs by definition suffer minimal (if any) injury to reputation, awarding damages to them would not serve the traditional purpose of libel law. . . . [L]imiting libel damages to actual injury to reputation has roots in the common law; accordingly, courts have long admitted evidence of a plaintiff's tarnished reputation as bearing on the question of defamatory harm. The libel-proof doctrine merely extends this principle to its logical conclusion.

*Id.* at 1916-17 (footnotes omitted).[3]

This Court most recently applied the libel-proof plaintiff doctrine in ***Davis v. The Tennessean***, 83 S.W.3d 125 (Tenn. Ct. App. 2001). In ***Davis***,

> [t]he plaintiff filed a libel action against a newspaper, *The Tennessean*, its publisher and its editor, alleging his reputation had been harmed by a sentence in an article which stated that he had shot a man, when, in fact, his co-defendant had killed the victim. The trial court granted the defendants' motion to dismiss, finding the plaintiff to be "libel proof" in this matter because he had been convicted of aiding and abetting in the murder and incarcerated for the remainder of his life for the crime, "render[ing] any reputation he may have had virtually valueless."

***Id.*** at 126. This Court affirmed. We noted that "[a] number of jurisdictions have adopted the 'libel-proof' doctrine, and it has often been applied in a situation where the plaintiff's complaint is that the publication accused him of the wrong crimes." ***Id.*** at 128-30 (citing ***Cardillo v. Doubleday & Co., Inc.***, 518 F.2d 638 (2d Cir. 1975); ***Ray v. Time, Inc.***, 452 F. Supp. 618 (W.D. Tenn. 1976), *aff'd* 582 F.2d 1280 (6th Cir. 1980); ***Coker v. Sundquist***, No. 01A01–9806–BC–00318, 1998 WL 736655, at *3 (Tenn. Ct. App., filed Oct.23, 1998), *perm. app. denied* (Tenn. May 10, 1999); ***Rogers v. Jackson Sun Newspaper***, No. C–94–301, 1995 WL 383000 (Tenn. Cir. Ct., filed Jan. 30, 1995)).[4]

---

[3] Some courts apply the libel-proof plaintiff doctrine in the context of determining whether a statement is "capable of a defamatory meaning." *See, e.g.*, ***Davis v. The Tennessean***, 83 S.W.3d 125 (Tenn. Ct. App. 2001). Other courts treat this doctrine as a limitation on damages.

[4] *See also* ***Wynberg v. National Enquirer, Inc.***, 564 F. Supp. 924 (C.D. Cal. 1982); ***Logan v. District of Columbia***, 447 F. Supp. 1328 (D.D.C. 1978); ***Jackson v. Longcope***, 476 N.E.2d 617 (Mass.

After discussing the cases cited above, we stated that "a plaintiff in a libel action must be able to show that his or her standing in the community and his public reputation for character has been injured by the inaccurate statement and, further, must have suffered real or actual damages due to that loss of standing or reputation." *Id.* at 130. Applying this rule to the facts of the case, we held, as a matter of law, that the published statement at issue was not capable of a defamatory meaning

> because, at the time of the publication, [plaintiff] was serving a ninety-nine year sentence for aiding and abetting the murder which is the subject of the article and his complaint. He participated in the crime which resulted in the murder. His character reputation with the public was established and could not be harmed by inaccurate attribution to him of conduct which was part of the crime in which he participated. His continued incarceration for a long time after the publication renders actual damage, with regard to his standing in the community, as a result of the article unlikely.

*Id.* at 131.

Relying on this Court's decision in **Davis**, defendants argue that plaintiff's reputation cannot be further damaged because he has been convicted of violent crimes and has been sentenced to spend the rest of his life behind bars. In response, plaintiff argues that being known as a suspected murderer is worse than being known as a convicted bank robber, kidnapper, and carjacker. Plaintiff also argues that, "[p]rior to his arrest, [plaintiff] was a highly visable [sic] champion of prisoner reentry issues which was chronicled in Jan. 2014 by the Wall Street Journal." Plaintiff emphasizes that many of the allegedly defamatory statements were published prior to his conviction in federal court.

We agree with defendants for two reasons. First, this Court determined that the plaintiff in **Davis** was libel-proof even though the plaintiff claimed that he was falsely accused of murder. We held that aiding and abetting a murder, a lesser crime, was equally harmful to the plaintiff's reputation under the circumstances of that case. The plaintiff in this case was convicted of committing multiple violent felonies. Even though these might be considered lesser crimes, plaintiff's reputation as a violent criminal has been established in the public eye. We do not mean to suggest that every person who has ever committed a crime is libel-proof under all circumstances. As other courts have noted, "criminal convictions, alone, are not enough to justify application of the doctrine." **Thomas v. Telegraph Publishing Co.**, 929 A.2d 993, 1005 (N.H. 2007) (citations

1985); **Thomas v. Telegraph Publishing Co.**, 929 A.2d 993 (N.H. 2007).

- 9 -

omitted). The doctrine "should be applied with caution and sparingly." *Id.* Application of the doctrine "depend[s] upon the nature of the conduct, the number of offenses, and the degree and range of publicity received[.]" ***Wynberg v. National Enquirer, Inc.***, 564 F. Supp. 924, 928 (C.D. Cal. 1982). In this case, plaintiff was accused, and ultimately convicted, of multiple violent felonies, including kidnapping and armed bank extortion. By his own admission, plaintiff's criminal activities were widely publicized. Defendants merely reported that the FBI suspected plaintiff of committing additional violent crimes *in connection with the same criminal enterprise*. "First Amendment considerations of free press and speech, promoting society's interest in uninhibited, robust, and wide-open discussion, must prevail over an individual's interest in his reputation in such cases." *Id.*

Second, it is true that courts generally look to the status of the plaintiff's reputation at the time of the allegedly defamatory publication. *See, e.g.*, ***Davis***, 83 S.W.3d at 131 (referencing plaintiff's reputation "at the time of the publication"). In the present case, most of the allegedly defamatory statements were published prior to plaintiff's convictions; however, they were still published after plaintiff's arrest and contemporaneously with his widely-publicized criminal trial.[5] It is a stretch for plaintiff to argue that he still had a positive reputation as a reformed ex-convict and successful businessman after he was arrested and charged with committing multiple violent felonies. In any event, we believe that plaintiff's subsequent convictions make that issue moot. *Cf.* ***Jackson***, 476 N.E.2d at 619 ("leav[ing] open the question [of] whether events subsequent to a libelous publication, proving a plaintiff's serious criminal misconduct prior to the publication, may be considered in determining whether a plaintiff is libel-proof."). Accordingly, we hold that plaintiff is libel-proof as that doctrine is articulated and applied in ***Davis***.

Other jurisdictions have also applied the libel-proof plaintiff doctrine when a plaintiff's defamation lawsuit is predicated on a publication that contains *unchallenged* statements that presumably caused as much, if not more, harm to the plaintiff's reputation than the allegedly defamatory statements. Harvard Law Review Association, *The Libel-Proof Plaintiff Doctrine*, 98 Harv. L. Rev. 1909, 1912-13, 1924-26 (1985) (citing ***Simmons Ford, Inc. v. Consumers Union of the United States, Inc.***, 516 F. Supp. 742 (S.D. N.Y. 1981); ***Jackson***, 476 N.E.2d at 618-19). Here, plaintiff only argued that *some* of the damning facts reported by defendants were defamatory. For example, plaintiff did *not* allege that any of the following statements were defamatory:

> Benanti stands accused of plotting a series of violent crimes in six states and carrying out those misdeeds in four of them, including Tennessee. Those crimes include carjacking, kidnapping, bank robbery and extortion. He is accused of kidnapping three East Tennessee bank officials and their

---

[5] There is one exception; it appears that Exhibit A-6 was published after plaintiff was convicted.

families . . . .

\* \* \*

In the kidnappings, entire families, including children, were held hostage. Guns were pointed at the heads of a baby and a toddler while their bound parents watched helplessly. A fake bomb was strapped to the elderly mother of one extortion victim.

In other words, defendants' articles portray plaintiff as a violent criminal who is capable of committing murder. According to the articles, plaintiff did not merely rob banks or break into cars. He participated in a criminal enterprise that involved kidnapping and terrorizing entire families, including children. Reporting that the FBI *suspected* plaintiff of killing someone – which he and/or his accomplices threatened to do on multiple occasions – could not seriously worsen plaintiff's reputation as a violent criminal. Accordingly, we hold that dismissal of plaintiff's complaint is also appropriate under this alternative application of the libel-proof plaintiff doctrine.

Because plaintiff suffered no additional loss to his already tarnished reputation, he cannot recover compensatory damages on his defamation claim.[6] Because we have determined that dismissal is appropriate on the basis of the libel-proof plaintiff doctrine, we do not need to decide whether the fair-reporting privilege applies or whether plaintiff sufficiently pled actual malice. Those issues are pretermitted.

**B.**

The next issue is whether the trial court violated plaintiff' constitutional right to due process by denying plaintiff a hearing. It is unclear what type of "hearing" plaintiff thinks he deserved – a hearing on the motion to dismiss or a trial on the merits of his defamation claim. In either case, plaintiff's position is without merit.

"[A] plaintiff in prison has no absolute right to have civil proceedings stayed *or to be present during civil litigation*." ***Logan v. Winstead***, 23 S.W.3d 297, 299 (Tenn. 2000) (emphasis added). This is especially true for pre-trial matters. ***Id.*** at 302 ("Motions to

---

[6] Because plaintiff's complaint did not request an award of nominal damages, we need not decide whether plaintiff is entitled to seek that form of relief. *But see **Davis***, 83 S.W.3d at 128 (citing ***Cardillo***, 518 F.2d 638 (affirming the dismissal of a defamation lawsuit because the libel-proof plaintiff was unlikely "to recover anything other than nominal damages")).

- 11 -

dismiss . . . can be litigated by an inmate in custody. . . . [A]n incarcerated litigant, acting pro se . . . can prepare and support pre-trial motions. With the discretion of the trial court in granting necessary extensions of time, prisoners should be able to proceed in accordance with the Rules of Civil Procedure."). In the present case, the trial court appropriately granted plaintiff an extension of time within which to file his response to defendants' motion to dismiss. Plaintiff was not entitled to appear in court to personally defend against that motion.

Plaintiff was also not entitled to a trial on the merits of his defamation claim. Defendants are permitted to file motions to dismiss in order to avoid the burden of defending against a frivolous lawsuit. If a defendant is successful on such a motion, plaintiff has no right to a trial on the merits of his claim. Such is the case here. *See* Part IV.A.

## C.

The last issue raised by plaintiff is whether the trial court committed reversible error by not advising plaintiff that he could amend his complaint. The answer to that question is "no." *See **Drumbarger v. State Bd. of Probation and Parole***, No. M2011–00086–COA–R3–CV, 2012 WL 184422, at *2 (Tenn. Ct. App., filed Jan. 20, 2012) (holding that "a trial court is under no obligation to advise a pro se litigant to amend his or her complaint.").

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Michael Benanti.[7] The case is remanded for enforcement of the trial court's order.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[7] Plaintiff entered into an agreement with the Appellate Court Clerk to pay the $550 filing fee in installments of $10 per month. To date, plaintiff has paid $120 toward that fee.